**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x

19 RECORDINGS LIMITED,

                Plaintiff,

v.                                                       14-CV-1056 (RA) (GWG)

SONY MUSIC ENTERTAINMENT,                  ECF CASE

                Defendant.

----------------------------------------------------------x

## MEMORANDUM IN SUPPORT OF SONY MUSIC ENTERTAINMENT'S MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S MARCH 17, 2015 OPINION AND ORDER

**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018

*Attorneys for Defendant*
*Sony Music Entertainment*

**PRELIMINARY STATEMENT**

On March 17, 2015, this Court issued an Opinion and Order (the "Opinion") granting in part and denying in part the motion to dismiss of defendant Sony Music Entertainment ("SME"). (Dkt. 32). SME respectfully submits that the Court's otherwise careful Opinion misapprehended the allegations of the Amended Complaint and overlooked a key fact in refusing to dismiss plaintiff's claim that SME breached the implied covenant of good faith and fair dealing in connection with streaming royalties.

To state a claim for breach of the implied covenant, a plaintiff must allege facts that, if true, would show that SME acted in bad faith. Here, the Court held that plaintiff stated a claim based on the allegation that the "ephemeral nature" of the exploitation by streaming providers with whom SME has contracted can "reasonably only be characterized as broadcasts and transmissions," and not as "distributions" or "sales." Respectfully, the Court appears not to have understood that the "ephemeral nature" to which plaintiff refers is the inherent non-permanent nature of all streaming—not something specific to particular streaming providers. This misunderstanding led the Court to believe that plaintiff was *not* claiming that merely entering into an agreement that characterizes streaming as a "distribution" or "sale" breaches the implied covenant, when in fact plaintiff is alleging *exactly*—and only—that. Plaintiff cannot state a claim for bad faith based solely on SME's entry into such an agreement, however, because (as the Opinion holds) the parties' Agreements expressly provide for SME to do so. Because the Amended Complaint does not plead any other fact in support of its claim that SME acted in bad faith, it necessarily fails to state a cause of action.

Pursuant to Fed. R. Civ. P. 60 and Local Civil Rule 6.3, SME therefore seeks reconsideration of the Opinion's denial of that prong of SME's motion seeking dismissal of plaintiff's implied covenant claim concerning streaming royalties.

ARGUMENT

A court may grant reconsideration where "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 543–45 (S.D.N.Y. 2013) (Abrams, J.) (granting reconsideration in part) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, at 256–57 (2d Cir. 1995)). Reconsideration is also appropriate in order "to correct a clear error." *Id.* (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992)).

Plaintiff 19 Recordings Ltd. ("19") asserts that SME breached the implied covenant by "'purposefully' drafting or editing the third-party agreements [with streaming service providers] to mischaracterize the nature of the relevant exploitation, and that it did so 'wrongfully and in bad faith' to 'avoid its full obligation to 19 . . . .'" (Opinion at 12). SME sought dismissal of 19's claim on the grounds that, *inter alia*, 19 claimed that SME's entry into any third-party agreement that characterizes streaming as a "distribution" or "sale," rather than solely as a "broadcast" or "transmission," necessarily breaches the implied covenant—even though the parties' Agreements permit SME to do just that.

The Court rejected SME's argument, because it disagreed with SME's characterization of 19's claim:

> 19 is not contending, as Sony argues, that "the mere fact of [Sony's] entry into such agreements" breaches the implied covenant. (Def.'s Reply 6). Nor is 19 arguing that "describing *any* third-party streaming agreement as a 'sales' or 'distribution'

2

> agreement necessarily constitutes bad faith." (Id. (emphasis in
> original).)  Instead, 19 is arguing that the "ephemeral nature of
> [the] exploitation" by the third-party streaming providers with
> which Sony has actually entered into agreements can reasonably
> only be characterized as broadcasts and transmissions, and that
> Sony's characterizations otherwise constitute bad faith.  (Pl.'s Opp.
> 4–5.)

(Id. at 12 (emphasis and brackets in original)).  The Court thus appears to have understood 19 to be making a claim that would not necessarily apply to all streaming, but instead was based on the "ephemeral nature" of the particular exploitation provided for in the specific agreements into which SME "has actually entered."

SME respectfully submits that the Court's understanding of 19's allegation was mistaken. Both the Amended Complaint and 19's opposition brief make clear that the "ephemeral nature of the exploitation" on which 19 bases its claim is the delivery of non-permanent copies of sound recordings to consumers.  For example, the full passage in 19's opposition brief from which the Opinion quoted reads as follows:

> All of these streaming services primarily or exclusively exploited
> the Masters by broadcasting or otherwise transmitting non-
> permanent copies of those Masters to end users . . . . The
> ephemeral nature of that exploitation of such Masters . . . can only
> be fairly described as "transmissions" or "broadcasts" . . . .

(Dkt. 25 at 5 (emphasis added).)   The Amended Complaint alleges the same.  (Am. Compl. ¶ 36 ("All streaming services exploit the Masters provided them by Sony by broadcasting or otherwise transmitting non-permanent copies of the Masters to end users . . . .")).

Streaming is non-permanent by definition, however:  "Streaming . . . does not result in the creation of a permanent audio file on the client computer."  United States v. Am. Soc'y of Composers, Authors & Publishers, 485 F. Supp. 2d 438, 442 (S.D.N.Y. 2007), aff'd in relevant part, 627 F.3d 64 (2d Cir. 2010); see also Toto, Inc. v. Sony Music Entm't, 2014 WL 5089418, at *2 (S.D.N.Y. Oct. 8, 2014) ("'[S]treams' . . . are temporarily available . . . ."); Panama Music

*Corp. v. Universal Music Grp.*, No. 12-20200-CIV, Omnibus Order, Dkt. 88 at 11–12, (S.D. Fla. July 9, 2013) ("[S]treams provide the consumer with the temporary ability to listen to a song.").

Thus, the "ephemeral" feature on which 19's implied covenant claim is based—the delivery of a non-permanent copy of a song—is not particular to the specific agreements into which SME has entered.  It inheres in all streaming.

Because 19's claim is based on the inherent, non-permanent nature of all streaming, 19 necessarily is arguing that describing *any* streaming as a "distribution" or "sale" breaches the implied covenant.  The Amended Complaint expressly alleges as much, asserting that only exploitations in the form of permanent downloads, and not streams, can be characterized in good faith as "distributions" or "sales."  (*See* Am. Compl. ¶ 40 (asserting that SME "could use its own judgment in order to enter into agreements which allowed for (i) streaming, transmissions, or broadcasts and/or (ii) distributions or sales of permanent downloads" but that SME "abused this discretion by . . .  purposefully mischaracterizing the streaming agreements in order to make them appear as permanent download agreements")).

As the Court held, however, the plain language of the parties' Agreements provides for SME to enter into agreements for "the exploitation of Audio Material by means of an Internet Radio Service *or any other kind of streaming service*," and which characterize that exploitation as a distribution or sale.  (Opinion at 10 (emphasis added)).  19 therefore cannot state a claim based solely on SME's entry into such streaming agreements, because that would conflict with the plain terms of the parties' Agreements.  *See LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*, 725 F.3d 184, 195 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2289 (2014) ("[T]he implied covenant of good faith cannot create duties that negate explicit rights under a contract." (citing *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983))).  Instead, to state a claim 19

must plead some other fact tending to show that SME's characterization of streaming as a "distribution" or "sale" was "arbitrary and in bad faith." (Opinion at 13). Indeed, that is the core holding of *Iqbal*: a plaintiff must plead some non-conclusory fact in support of allegations that otherwise permissible conduct was undertaken in bad faith. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680–83 (2009) (dismissing claim because the complaint "does not contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind").

But, as SME argued, the Amended Complaint does not plead any basis for its allegation of bad faith—and the Opinion does not identify one—other than the assertion that bad faith should be inferred from the non-permanent nature of streaming itself. (*See* Dkt. 30 at 6–7.) As a result, the implied covenant claim must be dismissed. *See Ward v. TheLadders.com*, 3 F. Supp. 3d 151, 164 (S.D.N.Y. 2014) ("Under New York law, to state a claim for breach of the implied covenant, the plaintiff must allege facts which tend to show that defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff." (internal quotation and citation omitted)); *United States ex rel. Smith v. N.Y. Presbyterian Hosp.*, 2007 WL 2142312, at *16 (S.D.N.Y. July 18, 2007) ("[A plaintiff] must allege the specific instances or acts that amounted to the breach of [the implied] covenants under the contract in question." (citing *Stanford Square, L.L.C. v. Nomura Asset Capital Corp.*, 228 F. Supp. 2d 293, 300 (S.D.N.Y. 2002))); *Yucyco, Ltd. v. Rep. of Croatia*, 1997 WL 728173, at *2 (S.D.N.Y. Nov. 19, 1997) (dismissing implied covenant claim because the complaint "fails to describe the specific actions on the part of particular defendants that allegedly breached this duty").

For the foregoing reasons, SME respectfully requests that this Court reconsider whether 19 sufficiently stated a claim for breach of the implied covenant of good faith and fair dealing as it relates to SME's purported underpayment of streaming royalties, and dismiss the claim.

Dated:   March 31, 2015                        Respectfully submitted,
         New York, New York

                                                /s/ Jonathan M. Sperling
                                               Jonathan M. Sperling
                                               Christopher Y. L. Yeung
                                               **COVINGTON & BURLING LLP**
                                               The New York Times Building
                                               620 Eighth Avenue
                                               New York, NY 10018
                                               (212) 841-1000
                                               (212) 841-1010 (fax)
                                               jsperling@cov.com
                                               cyeung@cov.com

                                               *Attorneys for Defendant*
                                               *Sony Music Entertainment*