Richard S. Busch (SB 5613)
KING & BALLOW
315 Union Street, Suite 1100
Nashville, Tennessee 37201
Telephone:  (615) 259-3456
Facsimile:   (615) 726-541

Kenneth E. Gordon (KG 5703)
GORDON, GORDON & SCHNAPP, P.C.
437 Madison Avenue, 39th Floor
New York, New York 10022
Telephone:  (212) 355-3200
Facsimile:   (212) 355-3292

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **19 RECORDINGS LIMITED** | ) | **Case No. 14-CV-I056 (RA)(GWG)** |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **PLAINTIFF 19 RECORDINGS** |
| | ) | **LIMITED'S REPLY IN SUPPORT OF** |
| **SONY MUSIC ENTERTAINMENT,** | ) | **MOTION FOR RECONSIDERATION** |
| | ) | |
| **Defendant.** | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

1

As this Court is aware, 19 pleaded in its Complaint that, during the parties' audit process, defendant Sony Music Entertainment ("Sony"), refused to provide the complete streaming agreements with its third party streaming services, instead providing only selective individual pages, most in heavily redacted form.  We now know why.

On May 22, 26, and June 2, upon Order of this Court, 19 finally received from Sony nearly full versions of Sony's agreements with 35 third-party streaming services deliberately withheld from 19 during the audit. There is no way to sugar coat this:  these agreements make clear that Sony attempted to fraudulently conceal during the audit process its systematic breach of the Recording Agreements.   Virtually every one of these agreements uses the term "transmission" to describe the streaming exploitation of the Masters by the streaming service despite Sony's contention during the audit process that they do not, and despite Sony deliberately withholding this critical information until ordered by this Court to produce it.

After finally being able to inspect the streaming agreements in their entirety, 19 now acknowledges that the agreements do not "mischaracterize" the exploitations (which 19 pled in light of Sony's position during the audit that the exploitations were not described as transmissions) and further acknowledges that Sony's failure to pay 19 for streaming at the higher royalty rate is more appropriately pled under its claim for breach of contract.

Notwithstanding, 19 submits this Reply to its Motion for Reconsideration, or, in the alternative, for Leave to File an Interlocutory Appeal ("Motion"), because, for the reasons set forth in its moving papers, the Court's reversal of its prior decision was not based on new facts or arguments and is clear error.  Moreover, without correction, the Court's ruling gives Sony the unfettered discretion in the future to arbitrarily classify streaming as a  "distribution" or "sale"

regardless of the actual nature of the exploitation – a result that was not intended by the parties and is not consistent with New York law.

In addition, now that 19 has had the opportunity to review the third party streaming agreements – the very agreements 19 has been requesting from Sony for years – along with other information recently made publicly available, it is clear that Sony has breached its duty of good faith and fair dealing by setting artificially low, below industry standard rates with Spotify in exchange for advertising revenue, which Sony does not have to share with 19.  Sony has done so with Spotify, the biggest streaming service, not only to enrich itself at the expense of 19 and its artists, but also because it is a part owner in Spotify.  The agreement with Spotify was not, therefore, an arm's length transaction, and the agreement to divert revenue to a share of advertising in exchange for accepting below industry royalty rates not only enriches Sony because that money does not purportedly have to be shared with 19 and the artists, but also increases the value of Spotify, which further enriches Sony as a part owner of that service. These new facts are separate from the facts pleaded in 19's breach of contract claim and were concealed from 19 by Sony's refusal to provide 19 the complete and unredacted streaming agreements.  In fact, Sony continues to attempt to conceal this information by producing partially redacted agreements in this litigation.  *See e.g.* Spotify Agreement at 17-19; 29-31 attached hereto as Exhibit A.  Therefore, concurrently with this Reply, 19 is filing a Motion to Amend its First Amended Complaint, and a proposed Second Amended Complaint, setting forth a new claim for breach of the duty of good faith and fair dealing

### I.      19's Motion Was Timely

As a threshold matter, Sony's contention that 19's Motion was untimely filed is incorrect. In this District, a filing is made electronically through the Court's CM/ECF system.   Under

Federal Rule of Civil Procedure 6(d), service of such a filing extends by three days the time for a party to act making 19's filing timely.  In fact, a Court in this District recently addressed this very issue finding the three-day extension provided by Rule 6 applicable to entry of a Court's Order filed electronically by the Clerk.  *See Stemcor USA, Inc. v. Miracero*, S.A. de C.V., No. 14-cv-00921, 2014 WL 5005041, at *2-3 (S.D.N.Y. Sept. 20, 2014) (3 day extension of time to file in Federal Rule of Civil Procedure 5 applies to filing made by both parties and the Court).[1]

## II.   19 Reasonably Believed that Sony had Mischaracterized Streaming Exploitations Due To Sony's Intentional Concealment of Material Information

Sony's unwillingness to be forthcoming with material information during the course of 19's audit and throughout these proceedings resulted in 19's reasonable belief that Sony had mischaracterized streaming exploitations in agreements with its third party streaming partners.  It is now clear that Sony intentionally concealed from 19 and its auditors the relevant provisions of the agreements in order to fraudulently cover up its systematic breach of the Recording Agreements.

As set forth in the Amended Complaint, 19 conducted an audit of Sony's books and records.  DE 18 at ¶ 20.  That audit revealed that Sony had accounted to 19 for all streaming exploitations at the lower royalty rate applicable to exploitations described as "distributions" or "sales."  *Id*. at ¶ 36.  19 asserted a claim relating to those payments, as streaming income could only be fairly characterized as a broadcast or transmission.  In response, Sony produced incomplete and redacted agreements to 19, which purported to show that each of the agreements

---

[1] Sony cites a case, decided on its merits and *not* on the issue of timing, which implies the three day extension does not apply to filings by the Court.  As 19 justifiably relied on a SDNY decision that is directly on point and squarely held that the three day rule applies to Orders filed by the Court  to calculate the date its motion was due, 19 would request a three day extension to make its filing timely if this Court decided not to follow *Stemcor*. Federal Rule of Civil Procedure 6(b) provides a mechanism for such an extension and such an extension would be warranted in this instance as there is directly relevant authority in this District, *Stemcor*, that 19's filing was timely.

used the phrase sales or distributions.  *Id*. at ¶ 30.  As there is no basis for ephemeral streaming to be described as a sale or distribution, 19 reasonably believed Sony had acted in bad faith by purposefully mischaracterizing the exploitations in its agreements with its streaming partners. *Id*. at 36-41.

Having now seen the *relevant* portions of the third party agreements that actually concern the exploitation (*see e.g.* Exhibit A), without Sony's deliberate filtering, it appears that virtually all of the agreements do not contain such a mischaracterization.  Indeed, at least 24 of 35 of the agreements use the word "transmission" to describe the streaming exploitations. For four of the eleven remaining agreements, 19 is unable to determine how the exploitation is defined because the agreements refer to definitions found in documents which were not produced.  Two of the remaining seven agreements define the exploitation using the word "transmit" while the remaining five agreements are either not material or do not  use the words "sale" or "distribution" to define the exploitation.

For example, Sony's agreement with the largest third party streaming service, Spotify, describes a "stream" as "each instance in which any portion of a recording is delivered by means of digital audio transmission which digital audio transmission is substantially contemporaneous with the performance of the recording . . . ." Ex. A at 10.  A nearly identical definition is found in virtually all of the remaining relevant Sony agreements.  *See, e.g.*, Ex. B at 13.

Thus, 19 acknowledges that its claim that Sony improperly paid 19 on streaming at the lower royalty rate applicable to sales or distributions is more appropriately presented as a breach of contract claim.

### III.    The Court Should Nonetheless Grant 19's Motion for Reconsideration

As Sony aptly pointed out in its Motion for Partial Reconsideration, filed March 31, 2015, reconsideration is appropriate "to correct a clear error." *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 543-45 (S.D.N.Y. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). Sony's sole argument in Opposition to 19's Motion – indeed the sole argument propounded by Sony throughout these proceedings – is that Sony has complete discretion to characterize the exploitations under its streaming agreements however it choses regardless of the actual nature of the exploitation. See DE 24 at 12; DE 34 at 5; (Tr. 27:17-24). As set forth in 19's Motion, this contention is wrong as a matter of law, as previously held by this Court, and it is on that basis that 19 seeks reconsideration. *See Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 296 (N.Y. 1995) (cited in the Court's Opinion and Order of March 17, 2015)(the implied covenant "works only to ensure that a party with whom discretion is vested does not act arbitrarily or irrationally.").

19's Motion for Reconsideration is not rendered less relevant by 19's acknowledgement that Sony's payment of royalties at the lower rate is properly pled as a breach of contract. The Court's decision is contrary to law and, if left to stand, essentially sanctions Sony to arbitrarily classify streaming as a "distribution" or "sale" in the future without consideration to the nature of the exploitation. Such a result was not intended by the parties, is not embodied in their agreement, and is not acceptable under New York law.

Accordingly, 19's Motion for Reconsideration or, in the alternative, for Leave to File an Interlocutory Appeal, should be granted. 19 further requests that the Court grant its Motion to Amend the Complaint, and proposed Amended Complaint, filed concurrently herewith.

Dated: June15, 2015                    Respectfully submitted,


                                       By:    /Richard S. Busch


                                              Richard S. Busch (SB 5613)
                                              KING & BALLOW
                                              315 Union Street, Suite 1100
                                              Nashville, Tennessee 37201
                                              Telephone:  (615) 259-3456
                                              Facsimile:   (615) 726-541

                                              Kenneth E. Gordon (KG 5703)
                                              GORDON, GORDON & SCHNAPP, P.C.
                                              437 Madison Avenue, 39th Floor
                                              New York, New York 10022
                                              Telephone:  (212) 355-3200
                                              Facsimile:   (212) 355-3292



                        **CERTIFICATE OF SERVICE**

        I hereby certify that on the 15th day of June 2015, the preceding document was sent by
Electronic Mail to:

                        Jonathan M. Sperling, Esq.
                        Christopher Yeung, Esq.
                        Douglas Curran, Esq.
                        COVINGTON & BURLING LLP
                        620 Eighth Avenue
                        The New York Times Building
                        New York, New York 10018


                                /s/Richard S. Busch