**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

19 RECORDINGS LIMITED,

                Plaintiff,

       v.                                14-CV-1056 (RA) (GWG)

SONY MUSIC ENTERTAINMENT,             ECF CASE

                Defendant.

------------------------------------------------------------X

<br>

**DEFENDANT SONY MUSIC ENTERTAINMENT'S OPPOSITION**
**TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

<br><br><br>

**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405

*Attorneys for Defendant*
*Sony Music Entertainment*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................................................iii

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND.................................................................................................................... 3

    A.    The  Parties' Contractual Relationship .................................................. 3

    B.    19's Amended Complaint and the Court's Ruling on SME's Motion to Dismiss........................................................................................................ 5

    C.    19's Unsuccessful Efforts to Gain Discovery of SME's Negotiations of Its Streaming Agreements........................................................................... 7

    D.    19's Motion for Leave to Amend and its Service of Document Requests............. 9

ARGUMENT ...................................................................................................................... 10

I.    19's Motion Should Be Denied Because the Proposed Amendments Are Futile............ 11

    A.    19's Allegation that SME Took Consideration in the Form of Advertising Revenue Rather than Royalty Payments Fails to State a Claim for Breach of the Implied Covenant.................................................................... 12

    B.    19 Fails to Plead Facts that Support Its Assertion of "Self-Dealing." .................. 14

II.    19's Motion Also Should Be Denied Because It Is Brought in Bad Faith. ...................... 16

CONCLUSION.................................................................................................................... 18

Case 1:14-cv-01056-RA-GWG   Document 72   Filed 07/08/15   Page 3 of 21

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*ARI & Co. v. Regent Int'l Corp.*
273 F. Supp. 2d 518 (S.D.N.Y. 2003) ................................................................................. 11

*Dilworth v. Goldberg*
914 F. Supp. 2d 433 (S.D.N.Y. 2012) ................................................................ 10, 12, 16

*Franco v. Diaz*
51 F. Supp. 3d 235 (E.D.N.Y. 2014) ................................................................................ 10

*Greenfield v. Philles Records, Inc.*
780 N.E.2d 166 (N.Y. 2002) ......................................................................................... 5, 13, 14

*In re Alstom SA Sec. Litig.*
406 F. Supp. 2d 433 (S.D.N.Y. 2005) ................................................................................ 15

*In re China Valves Tech. Sec. Litig.*
979 F. Supp. 2d 395 (S.D.N.Y. 2013) ................................................................................ 15

*In re Deutsche Telekom AG Sec. Litig.*
2002 WL 244597 (S.D.N.Y. Feb. 20, 2002) ...................................................................... 15

*In re Global Crossing Sec. Litig., Ltd.*
2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005) ..................................................................... 15

*LJL 33rd St, Assocs., LLC v. Pitcairn Props. Inc.*
725 F.3d 184 (2d Cir. 2013) ............................................................................................... 11

*S.E.C. v. First Jersey Sec., Inc.*
101 F.3d 1450 (2d Cir. 1996) ............................................................................................. 15

*Thyroff v. Nationwide Mut. Ins. Co.*
460 F.3d 400 (2d Cir. 2006) ............................................................................................... 11

iii

**PRELIMINARY STATEMENT**

Plaintiff 19's motion for leave to amend is the latest iteration of its bid to impose duties on defendant Sony Music Entertainment ("SME") that are contrary to the terms of the parties' agreements.

Beginning in 2002, 19 and SME entered into a series of agreements that gave SME the unlimited exclusive rights to exploit sound recordings by various contestants on the program *American Idol*. The agreements specified that SME would pay royalties to 19 for some, but not all, of those exploitations. 19 explicitly acknowledged in the agreements that the *limited* royalties promised by SME were sufficient consideration for the *unlimited* exploitation rights granted to SME. 19 also expressly agreed that it is not entitled to royalties where SME is credited with income on a "general or label basis" rather than in connection with a particular use of a given sound recording.

19 commenced this action in 2014. The Amended Complaint alleged at least fifteen different types of breach of contract. But the common thread binding several of the claims was 19's belief that SME breaches the agreements any time that it pursues a course of conduct that yields less in royalties for 19 than might some alternative. To take just one example, the parties' agreements contain an "escalation clause," which provides that the royalty payable by SME on sales of albums will increase once album sales reach a certain threshold. The Amended Complaint alleged that SME breached the implied covenant of good faith and fair dealing by selling single-track downloads (which do not count towards the escalation threshold) rather than making 19's recordings available only in the form of albums (which do). SME moved to dismiss this and other similar claims, and Judge Abrams granted the motion in relevant part.

Now, 19 seeks to amend its complaint to add another variation on this theme. SME entered into an agreement licensing the use of its catalog of sound recordings to the streaming

service Spotify. ████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████ 19's proposed new

claim alleges that SME agreed to accept below-market royalty rates in exchange for the

advertising credit, thus allegedly shifting consideration from a form that would generate artist

royalties to a form that would not.  19 claims that this breaches the implied covenant of good

faith and fair dealing—even though 19 never alleges that the *total* consideration paid by Spotify

is below market.

    19's motion to amend should be denied for two reasons.  *First*, the proposed amendment

is futile, because 19's proposed new claim is directly contrary to the terms of the agreement.

Having agreed that SME can be credited with income on a general or label basis (such as an

advertising credit) with no royalty obligation to 19, 19 cannot now claim that SME breaches the

contracts by receiving consideration in that form rather than in some other form for which 19

would receive royalties.  19 contends that SME's dealings with Spotify are somehow tainted by

SME's purported "control" of Spotify, but the fact that 19 asserts in support of that allegation—

SME's ownership of no more than 6% of Spotify—fails as a matter of law to give rise to an

inference of control.

    *Second*, 19's motion should also be denied because it is brought in bad faith.  19 has

previously begged the Court for wide-ranging discovery of the terms of SME's agreements with

streaming providers and their negotiation.  Judge Abrams rebuffed those requests as a "fishing

expedition."  Yet almost immediately after serving SME with this motion, 19 served document

requests on SME seeking that same discovery in connection with the proposed new claim.  19's

new claim is thus a thinly disguised vehicle for seeking precisely the invasive, exploratory discovery that the Court has previously disallowed.  The motion should be denied.

BACKGROUND

**A.    The  Parties' Contractual Relationship**

Plaintiff 19 Recordings Limited ("19") is a corporation affiliated with the company that launched *American Idol*.[1]  In connection with the *American Idol* competition, 19 entered into exclusive recording agreements with certain of the contestants who have appeared on the show.[2]

Beginning in 2002, 19 executed artist-specific contracts with SME[3] pursuant to which SME would distribute and make use of the sound recordings created by *American Idol* artists who had entered recording agreements with 19.  Under these agreements, 19 granted to SME an exclusive worldwide license to exploit those sound recordings by any method SME chose, as each agreement broadly "granted [SME] the exclusive right to manufacture, advertise, promote, distribute, sell, and otherwise exploit, and to license such rights to others, the individual recordings of the Artists in all configurations throughout the world."[4]

Each agreement sets forth in meticulous detail SME's royalty obligations to 19 in connection with SME's use of the sound recordings.[5]  The royalty provisions govern certain

---

[1]     Amended Complaint, Dkt. 18, ("Am. Compl."), ¶¶ 1, 6.

[2]     *Id*. ¶ 6.

[3]     As used here and in the Amended Complaint, "SME" refers to Sony Music Entertainment and its predecessors-in-interest.  (Am. Compl. ¶ 2.)

[4]     Am. Compl. ¶ 16; *see also, e.g.*, September 25, 2002 Agreement between SME and 19, Dkt. 20-2, ("19/SME Agmt."), ¶ 12.1.1(a).  As 19 does in the Amended Complaint (*see* Am. Compl. ¶ 16), SME will cite to the provisions of the parties' agreement regarding artist Kelly Clarkson as representative of the 19/SME artist-specific agreements, unless otherwise noted.

[5]     *See* 19/SME Agmt., Art. 7.

3

specifically identified exploitations, including sales of ordinary records,[6] electronic sales of records,[7] and distribution of recordings through internet streaming services,[8] among others.

The contract then states that the parties "acknowledge[] and agree[] that the remuneration" owed to 19 under the royalty provisions "is full and final compensation for the rights granted and services provided by [19]," and that "such remuneration represents and is full and sufficient reasonable and equitable remuneration for all . . . rights" granted to SME.[9] The agreement further provides that "[19] shall not be entitled to a share of income received by or credited to [SME] on a general or label basis."[10]

Thus, although SME has the "exclusive licence to exploit . . . all rights" in the sound recordings "now or hereafter conferred by the law" in any way that SME sees fit,[11] the parties agreed that SME would owe royalties to 19 only for those specific exploitations identified in Article 7.[12] The parties agreed that the royalties for those specific exploitations would constitute "full and sufficient" compensation for the unlimited rights that SME received.[13] And the parties further agreed that SME may receive additional revenue "on a general or label basis"—that is, revenue that is not tied to the sale of a particular sound recording—and that 19 "shall not be

---

[6]   *Id.* ¶ 7.1

[7]   *Id.* ¶ 7.7

[8]   *Id.* ¶ 7.16

[9]   *Id.* ¶ 7.17

[10]   *Id.*

[11]   *Id.* ¶ 12.1.1(a)

[12]   *Id.* ¶ 7.17

[13]   *Id.*

entitled" to any share of that revenue.[14]   In short, the parties anticipated that SME may exploit

the recordings in certain ways that would benefit SME, but that may not result in revenue for 19.

This contractual arrangement—that SME owes royalties only for those exploitations

identified in the contract—echoes what New York law would provide in any event.[15]   The parties

thus made explicit in ¶ 7.17 the legal principle that they anyway adopted by designating New

York law to govern the agreements.[16]

**B.      19's Amended Complaint and the Court's Ruling on SME's Motion to
          Dismiss.**

19 commenced this lawsuit in February 2014,[17] and amended its complaint in May

2014.[18]   The thrust of many of 19's claims was that SME breaches the agreements, and their

implied covenant of good faith and fair dealing, if it exploits its unlimited rights in ways that 19

believes do not maximize 19's royalties.   SME moved to dismiss these claims, and Judge

Abrams granted the motion in relevant part.   Three examples are particularly relevant to 19's

current motion.

First, Judge Abrams ruled that SME is entitled to receive income on a general or label

basis, without paying royalties to 19.   In particular, 19 contended that SME breached the contract

by failing to pay royalties on settlement proceeds that SME received from copyright-

---

[14]      *Id.*

[15]      *See Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 171–73 (N.Y. 2002) (holding that record company was entitled to exploit sound recordings without paying royalties, where the parties' agreement granted unconditional exploitation rights but did not specify a royalty for the exploitation at issue—"[h]owever sympathetic plaintiffs' plight").

[16]      *See* 19/SME Agmt. ¶ 28.1

[17]      *See* Complaint, Dkt. 2.

[18]      *See* Am. Compl.

infringement and piracy lawsuits.[19]  The Court dismissed the claim, relying on "the rule set forth in paragraph 7.17 that 19 is not 'entitled to a share of income received by or credited to [SME] on a general or label basis.'"[20]  Because no royalty provision required SME to share settlement revenue recovered "on a general or label basis," SME was free "to retain the full amount of any settlements such suits yield."[21]

Second, the Court rejected 19's theory that, despite SME's unrestricted rights to exploit the sound recordings, SME is obligated to exploit the recordings in a way that maximizes 19's benefit.  The parties' agreements contain an "escalation clause," which provides that the royalty payable by SME on sales of albums will increase once album sales—but not sales of individual track downloads—reach a certain threshold.[22]  19 contended that SME breached the implied covenant of good faith and fair dealing by "allow[ing] iTunes and other [digital service providers] to 'disaggregate' every album into individual song downloads" so that SME could "reap enormous financial benefits, without passing those benefits [*i.e.*, the escalated royalty] to Artists."[23]  Judge Abrams dismissed the claim, ruling that SME was not required to exercise its contractual discretion in a way that produces optimum benefit for 19.  The Court explained, "Nowhere does the Licensing Agreement restrict or even address Sony's discretion to sell disaggregated tracks.  Indeed, the Licensing Agreement expressly grants Sony the 'unlimited right' to 'manufacture Records . . .  by any method(s) now or hereafter known . . . .'"[24]  19's

---

[19]  *Id.* ¶ 97.

[20]  March 17, 2015 Opinion and Order, Dkt. 32, ("Op."), at 15.

[21]  *Id.*

[22]  19/SME Agmt. ¶ 7.1.

[23]  Am. Compl. ¶ 82.

[24]  Op. at 9.

claim would thus improperly "undermine [SME's] general right to act on its own interest" even if doing so meant 19 would receive reduced royalties.[25]

Third, and similarly, the parties' agreements provide that 19 is entitled to a lower royalty on revenue from streaming services when SME's contract with the streaming provider characterizes the exploitation as a "distribution" or "sale," and a higher royalty when the third-party agreement characterizes the exploitation solely as a "broadcast" or "transmission."[26]  19 claimed that SME breached the implied covenant by entering into streaming agreements that characterize the exploitation as a "distribution" or "sale," on the grounds that streaming can only "fairly" be characterized as a broadcast or transmission.  The Court initially misunderstood this claim and declined to dismiss it.  But after SME moved for reconsideration and explained that 19 was claiming that SME breached the implied covenant merely by doing precisely what the agreements contemplated, the Court granted SME's motion and dismissed the claim.[27]

### C.    19's Unsuccessful Efforts to Gain Discovery of SME's Negotiations of Its Streaming Agreements.

Following the Court's dismissal of 19's implied-covenant claim regarding streaming revenue, 19 asked Judge Abrams to reconsider her ruling, and to permit 19 to take discovery regarding SME's relationship with the third-party streaming providers.[28]  Judge Abrams rejected

---

[25]     *Id.* (quotation omitted).

[26]     19/SME Agmt. ¶ 7.16; Op. at 9–11

[27]     May 1, 2015 Order, Dkt. 51, at 1; May 1, 2015 Transcript, attached hereto as Ex. A to the Declaration of Douglas S. Curran ("Curran Decl."), at 4–7.

[28]     Curran Decl. Ex. A at 10–25 & 32–34.

19's application, stating that 19's arguments betrayed "a real desire for a fishing expedition."[29]

Judge Abrams also denied 19's oral application for leave to amend its complaint.[30]

Because Judge Abrams had already ruled that resolution of 19's *express* breach of contract claim relating to streaming royalties would turn solely on how the streaming exploitation is characterized on the face of SME's agreements with streaming providers,[31] 19 was left with no basis to seek discovery of SME's negotiation of its streaming agreements, or even the financial terms of those agreements.[32]

19 then filed a motion again asking the Court to reconsider its grant of SME's motion for reconsideration.  In that motion, 19 identified the issue of SME's relationship with streaming providers as "one of the most, if not the most, important and central issues in this litigation," and again asserted that it merited discovery.[33]  In the time being, with the Court having dismissed the only claim that could justify such discovery, 19 chose not to serve *any* document requests by the May 29 deadline to do so.[34]

---

[29]     *Id.* at 34.

[30]     *Id.* at 36–37.

[31]     Op. at 11 ("19's claim of breach thus turns . . . on the language of Sony's agreements with third-party streaming services . . . a narrow issue and one that should prove relatively easy to resolve.").

[32]     Curran Decl. Ex. A at 4 ("My hope, in any event, is that this claim can be resolved quickly with the production of . . . [streaming] agreements in which the description of the exploitation is unredacted.").

[33]     Plaintiff 19 Recordings Limited Motion to Reconsider or in the Alternative for Leave to File an Interlocutory Appeal, ("19 Mot. to Reconsider"), Dkt. 55, at 2.

[34]     *See* Case Management Plan and Scheduling Order, Dkt. 50, at ¶ 8(a).

**D.     19's Motion for Leave to Amend and Its Service of Document Requests.**

On June 15, 19 served on SME its motion for leave to file a Second Amended Complaint.[35]   19 seeks to add thirteen new paragraphs to its complaint, alleging that SME "structured its agreement with the streaming service, Spotify, in a manner designed to rob 19" of royalties in breach of the implied covenant of good faith and fair dealing.[36]   According to 19, SME has an equity interest in Spotify, "believed to be in excess of five percent of the company."[37]   19's proposed amendments allege that, by virtue of this equity interest, SME engaged in "self-dealing" by "exert[ing] control over Spotify in order to . . . wrongfully and in bad faith divert money from royalties that must be shared to other forms of revenue that [SME] can keep for [itself]."[38]   In particular, it contends that Spotify pays SME "a royalty rate that is substantially below industry standard,"[39] while at the same time, "Sony's agreement with Spotify ██████████████████████████████████████."[40]   The alleged effect is that "Sony is able to take in ███████████████████ in revenue without having the cost of paying royalties to the content creators who created the master recordings which allowed Sony to enter into its agreement with Spotify in the first place."[41]

---

[35]     Plaintiff 19 Recordings Limited Motion to Amend, Dkt. 64.

[36]     Proposed Second Amended Complaint, Dkt. 65-1, ("Proposed 2d Am. Compl."), ¶¶ 42–54; *see also* Redline Comparison of First Amended Complaint to proposed Second Amended Complaint, attached hereto as Curran Decl. Ex. B.

[37]     Proposed 2d Am. Compl., ¶ 44.

[38]     *Id.* ¶ 44.

[39]     *Id.* ¶ 45.

[40]     *Id.* ¶ 49.

[41]     *Id.* ¶ 50.

A week later, on June 22, 19 served its first document requests.  Fully half of them concern SME's exploitation of sound recordings by third-party streaming services.[42]  For instance, 19 now seeks "all documents concerning [SME's] relationship with Spotify" and "all communications between [SME] and other record companies concerning Spotify" including "negotiations with Spotify."[43]  19's objective is plain: to use the proposed Second Amended Complaint as cover to obtain the very discovery that Judge Abrams previously disallowed.

ARGUMENT

Despite the general liberal posture towards amendment, leave to amend should be denied where the proposed amendment would be "futile" because it would fail to state a claim.[44]  Leave should also be denied where the proposed amendment is brought in bad faith, including where "a party is seeking leave to amend solely to gain a tactical advantage."[45]

19's motion for leave to amend should be denied for both these reasons.  As detailed below, 19's proposed claim fails to state a cause of action, because, like several of the prior claims that Judge Abrams dismissed, it would negate SME's express right to receive income in forms that do not generate royalties for 19.  And the fact that 19 is already using the proposed new claim as a basis to seek discovery that Judge Abrams previously disallowed makes clear that the proposed amendment is in bad faith.

---

[42]     *See* Plaintiff's First Set of Requests for Production of Documents to Defendant, ("19 RFPs"), attached hereto as Curran Decl. Ex. C.

[43]     *Id.* at RFPs 11 & 12.

[44]     *See, e.g.*, *Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 450–55 (S.D.N.Y. 2012) (denying leave to amend as futile) (Gorenstein, M.J.).

[45]     *Franco v. Diaz*, 51 F. Supp. 3d 235, 245 (E.D.N.Y. Sept. 12, 2014).

## I.      19's Motion Should Be Denied Because the Proposed Amendments Are Futile.

19's proposed new claim alleges that SME breached the implied covenant of good faith and fair dealing by structuring its compensation from Spotify so as to receive part of that compensation in a form that does not generate royalties for 19.   Judge Abrams has already articulated the parameters of the implied covenant in this case, explaining that

> "it works only to ensure that a party with whom discretion is vested does not act arbitrarily or irrationally."  663 N.E.2d at 296.  "For this to occur, a party's action must directly violate an obligation that may be presumed to have been intended by the parties."  *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407–08 (2d Cir. 2006) *certified question accepted*, 857 N.E.2d 528 (N.Y. 2006) and *certified question answered*, 864 N.E.2d 1272 (N.Y. 2007).  The covenant, however, "does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract."  *Id.* at 408 (quotation omitted).

> Indeed, "New York law is clear that the implied covenant cannot be used to create independent obligations beyond the contract."  *ARI & Co. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 523 (S.D.N.Y. 2003).[46]

The Second Circuit has also made clear that "the implied covenant of good faith cannot create duties that negate explicit rights under a contract."[47]

Under this standard, Plaintiff's proposed amendment is futile.  19 acknowledged and agreed that SME may receive compensation on a general label basis that does not generate royalties.[48]  Thus, SME cannot breach the implied covenant merely by doing so.  And while 19 attempts to characterize SME's arrangement with Spotify as some sort of self-dealing, 19 fails to allege any facts that give rise to an inference that SME controls Spotify or otherwise engaged in self-dealing.

---

[46]      Op. at 4.

[47]      *LJL 33rd St, Assocs., LLC v. Pitcairn Props. Inc.*, 725 F.3d 184, 195 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2289 (2014) (citing *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983)).

[48]      19/SME Agmt. ¶ 7.17.

**A.  19's Allegation that SME Took Consideration in the Form of Advertising Revenue Rather than Royalty Payments Fails to State a Claim for Breach of the Implied Covenant.**

19 alleges that SME agreed to accept below-market royalty rates from Spotify.[49]  Because the standard for futility is whether "the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6),"[50] for purposes of this motion SME treats this false allegation as if it were true.

Royalty rates are only one strand of the multifaceted bundle of consideration paid by Spotify to SME, however. ████████████████████████████████████████
████████████████████████████████  ████████████████████████████████
████████████████████████████████  ██████  ████████████████████████
████████  ██████  ████  ████  ████████████████████████████  █
The allocation of consideration among these components reflects a variety of judgments and considerations.  A party might accept lower rates for one tier of service in exchange for higher rates on another. ████████████████████████████████████
████████████████████████████████████████████████████████████

---

[49]   Memorandum of Law in Support of Plaintiff 19 Entertainment's [sic] Motion to Amend, ("19 Memorandum"), Dkt. 65, at 4.

[50]   *Dilworth*, 914 F. Supp. 2d at 451.



███████████████████   Similarly, a party might be willing to accept lower rates in exchange for a larger advance or increased guaranteed minimum.

Critically, 19's proposed amendment never alleges that the *total consideration* paid by Spotify to SME is below-market.[57]  In fact, 19 concedes that Spotify is "paying the equivalent of a near fair market value to Sony."[58] ████████████████████████████

████████████████████████████████████████

█████████████████████████████████████ ████████████

████████████████████████████████████████

19 claims only that the *mix* of consideration is unfavorable to 19, on the grounds that the royalty rates are below market and that this shortfall in value was shifted to "other forms of income" such as the advertising provision.[60]

19's allegation fails to state a claim as a matter of law.  The implied covenant does not require SME to structure its affairs in whatever way yields the greatest royalties for 19; instead, as Judge Abrams already has held, SME can "act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract."[61]  In fact, 19's position is directly contrary to the Court of Appeals' holding in *Greenfield v. Philles Records*.[62]  In that case, the plaintiff similarly contended that the record company was prohibited from exploiting the plaintiff's sound recordings in ways that did not generate royalties for the plaintiff under the

---

██  ███████████████

[57]    *See generally* Proposed 2d Am. Compl. ¶¶ 42–54.

[58]    19 Memorandum at 5.

██  ████████████████████

[60]    19 Memorandum at 5.

[61]    Op. at 4.

[62]    780 N.E.2d 166 (N.Y. 2002).

terms of the parties' agreement.[63]   The Court of Appeals rejected the claim, holding that the record company was free to engage in those exploitations without paying royalties.[64]

Especially here, 19 cannot claim that the parties intended that SME would not receive consideration on a general or label basis (such as in the form of an advertising credit), rather than on a basis tied to the use of a particular sound recording, because 19 expressly agreed that it "shall not be entitled to a share of income received by or credited to [SME] on a general or label basis."[65]   Thus, as with 19's dismissed claim regarding sales of single-track downloads, 19's proposed new claim "would abrogate an express contractual provision, impermissibly create independent obligations beyond the contract, and undermine [SME's] general right to act on its own interest[.]"[66]

### B.     19 Fails to Plead Facts that Support Its Assertion of "Self-Dealing."

Because SME's alleged conduct is clearly permitted under the parties' agreements, 19 attempts to put a gloss of bad faith on it by alleging that SME has "significant power to exert control over Spotify in order to not only dictate how revenue will be paid, but wrongfully and in bad faith divert money from royalties that must be shared to other forms of revenue that [it] can keep for [itself]."[67]   The sole fact that 19 alleges in support of this assertion of control is that SME held an equity stake in Spotify of five to six percent when it negotiated the streaming

---

[63]      *Id.* at 171–73.

[64]      *Id.* ("We realize that our conclusion here effectively prevents plaintiffs from sharing in the profits that defendants have received from synchronization licensing.  However sympathetic plaintiffs' plight, we cannot resolve the case on that ground under the guise of contract construction.").

[65]      19/SME Agmt. ¶ 7.17.

[66]      Op. at 9 (citations and quotations omitted).

[67]      Proposed 2d Am. Compl. ¶ 44.

agreement.[68]  On this basis, 19 contends that SME's contract terms with Spotify are therefore the result of "textbook self-dealing."[69]  These sound-bite allegations fail to support 19's claim.

*First*, 19 does not allege any facts that give rise to an inference of control.  The control that 19 alleges SME had over Spotify "to dictate how revenue will be paid" is identical to the control necessary to establish liability under Section 20(a) of the Exchange Act: "the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."[70]  Allegations of minority stock ownership are insufficient as a matter of law to establish such control, however, "since minority stock ownership does not give the owner the power to direct the primary violator."[71]  Thus, courts have consistently held that allegations of 15%, 22%, and even 34% ownership of a corporation failed to state a claim for control.[72]  19's allegation that SME had a small equity interest in Spotify thus fails as a matter of law to substantiate the assertion that SME controlled Spotify and was negotiating "essentially with itself."[73]

*Second*, even had 19 pled facts giving rise to an inference of control, 19 fails to explain why the compensation terms between SME and Spotify "could only be obtained by self

---

[68]     *Id.*; 19 Memorandum at 4 n.3 (stating that "media reports claim that Sony owns between five and six percent of Spotify").

[69]     19 Memorandum at 5 ("[B]ecause of its ability to negotiate with itself, Sony was able to structure the financial terms . . . .").

[70]     *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1473 (2d Cir. 1996) (quotations omitted).

[71]     *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 489 (S.D.N.Y. 2005).

[72]     *See, e.g.*, *In re China Valves Tech. Sec. Litig.*, 979 F. Supp. 2d 395, 414 (S.D.N.Y. 2013) (holding that allegation of 34% ownership failed to state a claim of control); *In re Global Crossing Sec. Litig., Ltd.*, 2005 WL 1907005, at *1, 13 (S.D.N.Y. Aug. 8, 2005) (holding that allegation of 15.8% ownership failed to state a claim for control); *In re Deutsche Telekom AG Sec. Litig.*, 2002 WL 244597, at *6 (S.D.N.Y. Feb. 20, 2002) (holding that allegation of 22% ownership failed to state a claim for control).

[73]     Proposed 2d Am. Compl. ¶48.

dealing."[74]   Effectively, 19 asserts that, absent self-dealing, Spotify would be unwilling to pay consideration in the form of an advertising credit rather than in the form of cash royalties, despite the fact that Spotify posts huge net losses year after year.[75]

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, a complaint is insufficient under Fed. R. Civ. P. 8(a) because it has merely alleged but not show[n] that the pleader is entitled to relief."[76]   Because the facts that 19 alleges are entirely consistent with normal, self-interested economic behavior by Spotify, even adequate allegations of control would not support an inference of "self-dealing."[77]

## II.   19's Motion Also Should Be Denied Because It Is Brought in Bad Faith.

19 has already made clear that the only discovery that it truly wants in this lawsuit is discovery of SME's negotiations with streaming providers.  19 has described SME's relationship with streaming providers as "one of the most, if not the most, important and central issues in this litigation."[78]   19 has essentially begged the Court for such discovery.[79]   And once Judge Abrams dismissed the claims that might justify such discovery—and rejected 19's entreaties as a "fishing

---

[74]     *Id.*

[75]     *See, e.g.*, David Gauthier-Villars, *Spotify Revenue Rises in 2014 but Still in Red on Heavy Investments*, WALL STREET JOURNAL, May 8, 2015, *available at* http://www.wsj.com/ articles/spotify-revenue-rises-in-2014-but-still-in-red-on-heavy-investments-1431102236 (reporting that Spotify "posted a net loss of €162 million last year, compared with a net loss of €55.9 million in 2013").

[76]     *Dilworth,* 914 F. Supp. 2d at 451 (quotations omitted; modifications in original), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[77]     *See Bell Atlantic v. Twombly,* 550 U.S. 544, 554–57 (2007) (holding that allegation that is "consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy" fails to state a claim) (quotation omitted); *Kendall v. Visa U.S.A., Inc.,* 518 F.3d 1042, 1049 (9th Cir. 2008) (stating that "[a]llegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient" to state a cause of action).

[78]     19 Mot. to Reconsider at 2.

[79]     Curran Decl. Ex. A, at 32–34.

expedition"—19 did not bother serving *any* document requests by May 29, the deadline for initial document requests.[80]

Now, 19 seeks to gin up a new claim that it hopes will allow it to seek that discovery. This is not mere speculation.  Rather, one week after serving the instant motion, and despite the lapse more than three weeks earlier of the deadline for serving initial document requests, 19 served document requests on SME that reveal the true purpose of 19's proposed amendments.[81] Among other things, these requests seek all documents relating to negotiation of all of SME's agreements with streaming providers,[82] as well as any communications with other record companies about Spotify.[83]   These and other requests are precisely the type of invasive and extensive discovery that 19 previously sought and that Judge Abrams did not allow.[84]  And, if the claim goes forward, the Court can be sure that the next step will be third-party subpoenas from 19 to every other major record company, seeking evidence to support 19's conclusory, information-and-belief allegation that they have conspired with Spotify.[85]

These discovery requests make clear that 19's motion is brought at least in part merely to provide cover for the fishing expedition that 19 has unsuccessfully sought until now. Accordingly, 19's motion should also be denied on the additional grounds that it is brought in bad faith.

---

[80]    Case Management Plan and Scheduling Order, Dkt. 50, at ¶ 8(a).

[81]    *See* Curran Decl. Ex. C.

[82]    *Id.* at RFP 6.

[83]    *Id.* at RFPs 11 & 12.

[84]    Curran Decl. Ex. A, at 32–34.

[85]    *See* 19 Memorandum at 4 (alleging on information and belief that "other labels have in most likelihood engaged in the same self-dealing as Sony with respect to the diversion of payments to them, and the below market streaming royalty rates payable to artists in their Spotify agreements.").

CONCLUSION

For the foregoing reasons, SME respectfully requests that this Court deny Plaintiff's motion.

Dated:  July 2, 2015

Jonathan M. Sperling
Douglas S. Curran
**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000
jsperling@cov.com
dcurran@cov.com

*Attorneys for Defendant*
*Sony Music Entertainment*

18