# COVINGTON

BEIJING   BRUSSELS   LONDON   LOS ANGELES
NEW YORK   SAN FRANCISCO   SEOUL
SHANGHAI   SILICON VALLEY   WASHINGTON

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T +1 212 841 1000

November 18, 2015

**BY ECF**

Hon. Gabriel W. Gorenstein
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

>  Re: *19 Recordings Ltd. v. Sony Music Entertainment*, 14-cv-1056 (RA) (GWG)

Dear Judge Gorenstein:

We represent defendant Sony Music Entertainment ("SME"). In advance of the November 19 hearing, and as directed by the Court's November 13 Order, the parties submit this joint letter regarding the relief that SME seeks from the Court. (*See* ECF No. 111).

As set forth below, SME requests that the Court enter an order:

i. Directing 19 to collect and produce all documents responsive to SME's requests from third parties acting on 19's behalf, including the auditors and attorneys involved in 19's audits of SME's royalty accounting and subsequent discussions with SME about the purported results of those audits;

ii. Directing 19 to (a) complete its production in response to SME's May 29, 2015 First Set of Requests for the Production of Documents by December 1, 2015, and (b) complete at least one half of the total production by November 23, 2015;

iii. Limiting 19 to a single deposition of SME; and

iv. Extending SME's, but not 19's, time to complete depositions and all other fact discovery until March 18, 2016; extending the interim deadlines for SME to serve interrogatories and requests for admission until February 16, 2016; and extending the deadline for completion of expert discovery by both parties until June 30, 2016.

SME is not in a position to determine what remedy to seek in connection with 19's document preservation and collection until after it completes its production and SME has had the opportunity to depose witnesses.

### A. SME Seeks an Order Directing 19 To Collect and Produce All Responsive Documents from Third Parties Acting on its Behalf.

#### 1. SME's Position

Prior to commencing this lawsuit, 19 conducted a series of audits of SME's royalty accounting. Many of 19's claims were first raised in the context of those audits. In fact, 19's supplemental responses to SME's interrogatories, served on November 16, identify the audit reports as the sole factual basis for many of 19's claims.[1]

One of the principal issues raised by SME in its October 23 letter to the Court, and at the October 29 hearing, was 19's failure to properly collect documents from these auditors. (ECF No. 94 at 2–3; Oct. 29, 2015 Tr. at 3:11–15; 4:12–5:3). In particular, 19's initial production did not include any emails exchanged among the auditors, or between the auditors and 19. This contemporaneous correspondence regarding the issues now asserted in the lawsuit is critical evidence.

19 acknowledges that the auditors' documents are in 19's custody and/or control, but its representations to SME and the Court about the scope of its search have been vague and inconsistent. The same goes for 19's collection of documents from Kenneth Kraus, an attorney for 19 that corresponded with SME and with the auditors in connection with the audit. The parties' discussions suggest that 19 intends to defer to Mr. Kraus's view of whether he has anything "relevant," rather than instructing Mr. Kraus on what to search for and collect.

To date—nearly six months after SME served its document requests and with one month remaining before the close of fact discovery—19 has not produced a single piece of internal correspondence among any of these individuals. SME therefore requests that the Court order 19 to collect and produce all responsive documents held by third parties acting on 19's behalf, including these auditors and attorneys.

#### 2. 19's Position

19 has never disputed that it was obligated to produce responsive non-privileged documents from its auditors and Mr. Kraus. In fact its initial document production of over 5,000 pages was composed of documents received from 19's auditors. To ensure the completeness of its production, 19 has asked its auditors to make any additional responsive documents, including emails, available to 19 for possible production to SME. 19 has received some additional documents, which have been produced to SME, and expects more documents to be forthcoming. When those documents are available to 19, they will be reviewed and produced to SME. Any responsive emails with the auditors in 19's files will be reviewed and produced as well.

---

[1] As set forth in its November 16 letter to the Court, (ECF No. 113), SME disputes that these interrogatory responses are sufficient under the Federal Rules.

As for Mr. Kraus, during the series of meet and confers after the October 29 hearing, I informed SME that Mr. Kraus was out of the country and currently unavailable. Once we were able to confer with him about SME's document requests, he agreed to send us all of his files relating to this lawsuit or the audits that preceded it. He is currently collecting documents. Once he provides them to 19, they will be reviewed for responsiveness and privilege in the same manner as other documents, and those that are responsive and nonprivileged will be produced.

19 has also obtained files from Andy Stinson, 19's counsel in the UK, who was the person primarily responsible for negotiating and drafting 19's agreements with SME and the artists that are at issue in this case. A portion of those, consisting of the form agreements with artists and documents relating to the negotiation of the Master Agreement at issue in this case, have already been produced to SME. The remainder are being reviewed and any additional responsive, non-privileged documents in his files will be produced.

In sum, SME seeks an order compelling 19 to do what it is already doing. Because 19 is complying with its discovery obligations, there is no need for an order.

> B. **SME Seeks an Order (1) Requiring 19 to Complete its Document Production by December 1, (2) Requiring 19 to Complete at Least One Half of the Production by November 23, and (3) Limiting 19 to a Single Deposition of SME.**
>
> 1. <u>SME's Position</u>

The current fact discovery deadline is December 18, 2015. Because 19 has not shown good cause to extend the deadline, 19 must complete any depositions by that date. (*See* ECF No. 110 at 2–3). Nonetheless, 19 has refused to agree to complete its document production before then—which would be nearly *seven months* after SME served its requests. That is fundamentally unfair to SME, which would be required to prepare witnesses for deposition without having received 19's documents. In fact, while SME was drafting its portion of this letter, 19 served a Rule 30(b)(6) notice purporting to require SME to testify on December 9 regarding a twelve-page list of topics, as well as two other deposition notices.

19's delay in completing its document production is also inexcusable. SME served its documents requests on May 29. (ECF No. 94-1). As set forth in SME's November 5, 2015 letter to the Court (ECF No. 108), 19's counsel states that it received its clients' ESI in July or August 2015. In its November 9 response, however, 19 admitted that it did not even give that ESI to its e-discovery vendor until October 16—which is two days after SME wrote to 19 complaining about the inadequacy of its production. (*See* ECF No. 109 at 1). As stated in SME's November 5 letter, it also appears that 19 did not begin actually processing the ESI until after the October 29 hearing. (ECF No. 108 at 4). 19's responsive letter of November 9 did not dispute that fact; instead, it stated only that an extraction report—a step prior to processing the data for review—was completed earlier. (ECF No. 109 at 1). In addition, 19's November 9 letter revealed that its

counsel still had not received 19's hard copy documents (*Id.* at 2)—nearly two weeks after 19 identified those documents to the Court in its October 28 letter (ECF No. 101 at 3).

Finally, 19 assured the Court at the October 29 hearing that it would make a "significant" production within two weeks. (Oct. 29, 2015 Tr. at 7:3–5) Yet, as of November 17, 19 had not produced any documents other than (i) the form agreements that the Court directed 19 to provide, and (ii) a total of *sixteen* other documents consisting entirely of agreements and audit reports.[2] At the same time, since the date of the conference, 19 has propounded three additional sets of purported document requests, over 200 requests for admission, and a Rule 30(b)(6) notice identifying over 100 deposition topics.

To prevent further prejudice to SME, SME therefore requests that this Court enter three related orders (i) requiring 19 to complete its production by December 1, (ii) requiring 19 to complete at least half the production by November 23, and (iii) limiting 19 to a single deposition of SME.

A December 1 production deadline is eminently fair to 19. It grants 19 more than six months from service of SME's document requests to complete its production. At the same time, a December 1 deadline leaves SME barely two weeks to both review the documents that 19 produces and prepare for any deposition before the fact-discovery deadline. 19 should not be permitted to capitalize on its own delay by sandbagging SME with documents and then noticing multiple depositions to be completed within days. Limiting 19 to a single deposition in these circumstances—presumably of a Rule 30(b)(6) witness—permits 19 to engage in fact discovery, while preventing 19 from further prejudicing SME through its delay. And in order to ensure that 19 does not exploit the December 1 deadline by withholding the bulk of its production until the last day, 19 should be required to complete at least one half of the production by November 23.

2. 19's Position

SME continues to mischaracterize 19's efforts in discovery. Due to circumstances that have been previously discussed with SME and the Court, 19 was slow to complete its document production after its initial production in July. However, this inadvertent activity does not support SME's demand that the Court impose arbitrary and unreasonable deadlines on 19. SME's request for an order requiring 19 to complete half of its document production by November 23 and the remainder by December 1 is not reflective of 19's good faith efforts to complete its production and in any event is simply not feasible.

---

[2] 19 has chosen to attach the current draft of 19's e-discovery protocol as an exhibit to this letter. The parties continue to negotiate various aspects of this protocol, including 19's proposed search terms.

19 does take its discovery obligations seriously and has made significant progress on its response to SME's document requests. SME raised no objection to 19's document production until October 14. This led to a hearing with the Court on October 29. Since the October 29 hearing, 19 has had at least five telephone conferences with SME's counsel relating in some way to the document production and e-discovery. SME's constant requests to change the ESI protocol and search terms have led to some delay in 19's ability to move forward with its production. SME's latest request asks 19 to incorporate over 850 additional search terms. In response to SME's requests, 19 has added approximately 13 additional pages of search terms to be applied to the data and expects the number of documents to review to grow as a result. In addition, 19 has agreed to produce documents in SME's requested format, which requires some additional time to prepare for production. A copy of the revised ESI protocol and search terms is attached as Exhibit A.

Since the October 29 hearing, 19 has sent three productions, totaling approximately 2,000 pages, to SME. These include the form agreements between 19 and the Artists, drafts of the negotiation of the Master Agreement between SME's predecessor BMG and Andy Stinson on behalf of 19, and additional documents received from the auditors, including audit reports. A hard drive containing an additional production of approximately 101,400 pages was sent today to SME and will arrive tomorrow morning.

Furthermore, 19's counsel has assembled a team of nine attorneys, five of whom are working full time and four of whom are working part time reviewing documents for production. As of this morning, this team had reviewed over 10,000 additional documents, and approximately fifty-percent of those documents have been tagged as responsive. In addition, we have reviewed eight bankers boxes of documents and provided two and a half bankers boxes of responsive documents to 19's e-discovery vendor to prepare for production. Twenty-three additional boxes are en-route to 19's counsel and will be reviewed promptly.

We expect to make another production of non-privileged, responsive documents to SME early next week, and will continue a rolling production for all additional non-privileged documents as they become available. As of today, there are approximately 150,000 additional remaining documents to review. 19 will continue to roll its production to SME as documents are reviewed and approved for production. 19 will continue to assess this process and make changes as needed. Our goal remains to complete the production by December 18.

Similarly unreasonable is SME's request that the Court limit 19 to a single deposition of SME. Not surprisingly, SME provides no basis for this request. It has become clear since the October 29 hearing that SME is attempting to leverage issues with 19's document production (which 19 is in the process of curing) to create an immensely disparate, one-sided discovery process intended to deny 19 any discovery from SME, to force 19 to devote most of its time and resources to satisfying a myriad of unreasonable demands, and to obscure the issues in this litigation. Fundamentally, this case is about 19's allegations that Sony underpaid royalties to its artists – a determination made by 19's independent auditors after a lengthy audit of SME's books

and records (lengthy in part due to SME's refusal to produce documents relevant to the audit). The evidence of whether or not this is true is almost entirely in SME's control. 19 does not deny that SME is entitled to take discovery from 19, but SME's scorched earth approach to any discovery dispute and unwillingness to cooperate with counsel in discovery, in the context of this case, creates a sideshow. 19 requests that the Court deny SME's unreasonable requests to deny 19 adequate discovery in this case.

### C. SME Seeks an Order Extending SME's Time to Take Fact Discovery by Three Months.

#### 1. SME's Position

19 should not be permitted to benefit from its own delay, but, by the same token, 19's failure to timely fulfill its obligations should not be allowed to prejudice SME. SME therefore requests that the Court grant SME a three-month extension of its time to complete fact discovery of 19, until March 18, 2016, in order to permit SME the time necessary to fully review the documents that 19 produces, serve any follow-up discovery requests, and depose 19's witnesses.[3]

An extension is especially appropriate because only now, as a result of SME's motion to compel, has SME learned key information that requires follow-up that cannot reasonably be completed by December 18. For instance, SME learned for the first time that 19's attorney, Andrew Stinson, was solely responsible for drafting the form agreements that gave rise both to 19's agreements with the artists and, ultimately, to 19's agreements with SME. Mr. Stinson is a non-party residing in the United Kingdom, such that SME may be required to pursue service of a subpoena through Hague Convention procedures in the event he does not agree to appear voluntarily for a deposition. Other third-party witnesses give rise to similar considerations. 19's recent disclosures also occasion additional discovery regarding the extent of 19's document preservation and collection efforts (some of which may require SME to subpoena former employees of 19 or other third parties). And 19's document production may reveal additional issues that warrant further discovery, whether in the form of additional document requests,

---

[3] *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1232267, at *5 (N.D. Cal. Apr. 12, 2012), order clarified, 2012 WL 2862613 (N.D. Cal. July 11, 2012) (enforcing defendants' motion to enforce a scheduling order for production of documents not timely produced by plaintiff and simultaneously granting defendants' request to extend the period for certain discovery "[i]n order to mitigate the prejudice" to defendants); *Carlson v. Geneva City School Dist.*, 277 F.R.D. 90 (W.D.N.Y. 2011) (extending discovery period for defendant to take plaintiff's deposition because defendant had been diligent in pursuing the deposition, but plaintiff had failed to produce documents; "On this record, I find that defendants acted with sufficient diligence in pursuing Carlson's deposition to justify allowing that deposition to proceed. Carlson has been on notice since March 2010 that defendants intended to depose her; but for Carlson's failure to produce requested medical records (discussed *infra*), that deposition would have occurred.").

interrogatories, or depositions. SME has shown good cause for an extension of its time to take fact discovery, because due to 19's delay they have emerged only now despite SME's diligence in timely serving document requests.

Further, the parties initially devised, and Judge Abrams entered, a discovery schedule that provided ample opportunity for expert discovery following the completion of fact discovery. (*See* ECF No. 50). SME's ability to fully engage in expert discovery should not be curtailed because 19's delay necessitated a fact-discovery extension. As a result, SME requests that the Court extend the expert-discovery period (for both parties) through June 30, 2016.

        2.      <u>19's Position</u>

19 agrees that an extension is needed, but believes it should apply to both parties.

SME complains of prejudice, but any prejudice it has suffered is at least partly of its own making. SME had 19's initial document production in early July but waited over three months to complain about what it characterized as that production's obvious insufficiencies. As SME notes above, this did trigger renewed efforts on 19's part with respect to the search and production of responsive ESI, something that obviously would have happened sooner if SME had raised the issue promptly. SME is also aware that one reason for 19's delay in retaining an e-discovery vendor was that 19's counsel initially thought the volume of data was much smaller and could be processed in house. Only when it became apparent that the files to be searched were too large for this to be feasible did 19 retain DSi to assist in the production. Had SME raised its complaints promptly, this entire process of ramping up for processing of large volumes of data could have started much earlier.

Likewise, SME has taken the position that it has no obligation to produce any documents in this case, in response to any form of discovery request. It could have done what 19 did in response to SME's document request—asserted and preserved its objections, but nonetheless agreed to produce responsive documents subject to its objections. SME has taken a calculated risk by betting that the Court will not require it to produce any documents or information in response to 19's document requests, interrogatories, and deposition notices. If that proves to be incorrect, SME will have put itself in the position of having to do extensive discovery responses in an impossibly short period of time. All of which argues for a reciprocal extension of the existing deadlines, rather than the one-sided version SME seeks.

    **D.**    **SME Reserves its Right to Seek Sanctions.**

        1.      <u>SME's Position</u>

SME's November 5 letter identified additional concerns regarding 19's preservation of documents, identification of custodians, and search for responsive material. As the Court's November 13 Order notes, however, some of these issues appear to be in flux.

As a result, SME will not be in a position to determine whether and to what extent is has been prejudiced by these issues until after it has completed additional discovery, including reviewing 19's documents and deposing 19's witnesses. Until then, SME respectfully reserves its right to seek sanctions or other remedies in connection with 19's document preservation and collection.

        2.        <u>19's Position</u>

Obviously either party can seek sanctions if it discovers spoliation or other improper conduct, but no purpose is served by suggesting, without any evidence whatsoever to back it up, that this issue is somehow before the Court. It is not, and the Court should simply ignore this part of SME's letter.

        \*        \*        \*

The parties submit this letter at the Court's request in order to address the issues that SME initially raised in its November 5 letter (ECF No. 108), and that 19 addressed in its November 9 response (ECF No. 109). The parties respectfully note that this letter does not address the issues that they have raised in other letters submitted for the Court's consideration. (ECF. Nos. 106, 110, 112, 113, 114, & 115).

Respectfully,

Jonathan M. Sperling

CC: All counsel of record