KING & BALLOW

LAW OFFICES

315 UNION STREET

SUITE 1100

NASHVILLE, TENNESSEE 37201

TELEPHONE: 615/259-3456

FACSIMILE: 615/254-7907

www.kingballow.com

**Direct Dial: (615) 726-5434**
**Direct Facsimile: (888) 688-0482**
**E-mail: sdouse@kingballow.com**

January 7, 2016

***Via CM-ECF***
Hon. Gabriel W. Gorenstein
United States Magistrate Judge
United States Courthouse
500 Pearl St.
New York, NY 10007

> Re:    ***19 Recordings Limited v. Sony Music Entertainment***
>        **Case No. 14 Civ. 1056**

Dear Judge Gorenstein:

We represent Plaintiff 19 Recordings Limited ("19") in the above referenced action. We write concerning the insufficient responses of Defendant Sony Music Entertainment ("Sony") to 19's Second, Third, Fourth, and Fifth Sets of Requests for Production of Documents ("RFP").[1] Sony provided blanket objections to all of the RFP's in an effort to avoid any meaningful production of documents. For the reasons set forth below, 19 respectfully seeks an order compelling Sony to produce the requested documents.[2]

Attached as Exhibits A, B, C, and D are 19's Second, Third, Fourth, and Fifth Sets of RFP's, respectively. Attached as Exhibits E, F, G, and H are Defendant's Responses to those requests. Sony asserted blanket objections of relevance, vagueness, and

---

[1] We recognize Your Honor's individual practices specify that letter motions should normally be limited to five pages but, because of the number of individual requests involved, we respectfully request the Court's indulgence in allowing us to submit a longer letter. We have informed Sony's counsel that we would agree to a ten-page response.

[2] A hearing before Your Honor on the motion to amend the complaint to add a claim relating to Spotify is scheduled for January 12, 2016, at which time the Court could also hear argument on any of the matters raised in this letter. The question of whether Sony should be required to respond to 19's previously served requests for admissions is being presented by separate letter motion. 19 will also be filing a joint letter addressing Sony's objection that some of 19's Second Set of Document Requests duplicate requests made in 19's First Set of Document Requests.

SAN DIEGO OFFICE:

6540 LUSK BOULEVARD, SUITE 250 · SAN DIEGO, CALIFORNIA 92121 · TELEPHONE: 858/597-6000 · FACSIMILE: 858/597-6008

Hon. Gabriel W. Gorenstein
January 7, 2016
Page 2

burdensomeness; one or more of these objections was asserted in response to virtually all of the requests.

The parties have conferred by telephone on four occasions, with these conferences collectively covering Sony's objections to all of 19's four outstanding sets of document requests.[3]  Except for a handful of requests as to which the parties were able to resolve their differences,[4] Sony has refused to produce any documents in response to most of 19's requests despite the fact 19 repeatedly offered to revise, clarify, or narrow its requests in an effort to overcome Sony's objections. Sony also refused to propose revisions or limitations that would resolve its objections, stating that it was not Sony's obligation to tell 19 how to fix 19's deficient requests.  As a result, 19 confirmed to Sony, in light of this impasse, it would move to compel on all of the outstanding document requests to which Sony maintained its objection to producing any documents.

## I.   Relevance

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).[5]  Relevance under Rule 26(b)(1) is "an extremely broad concept."

---

[3]  The first meet-and-confer was held on November 25, 2015 at 12:15 PM CST and lasted approximately one hour.  Jonathan M. Sperling and Douglas S. Curran of Covington & Burling represented Sony; Steven C. Douse and Courtney C. Karnes of King & Ballow represented 19.  The second meet-and-confer was held on December 16, 2015 at 2:05 PM CST and lasted approximately one hour.  Douglas S. Curran of Covington & Burling represented Sony; Steven C. Douse, Courtney C. Karnes, and Christopher G. Gurchiek of King & Ballow represented 19.  The third meet-and-confer was held on December 17, 2015 at 2:30 PM CST and lasted approximately one hour.   Douglas S. Curran of Covington & Burling represented Sony; Steven C. Douse and Christopher G. Gurchiek of King & Ballow represented 19. The fourth meet-and-confer was held on December 22, 2015 at 3:10 PM CST and lasted approximately one hour.  Douglas S. Curran of Covington & Burling represented Sony; Steven C. Douse and Christopher G. Gurchiek of King & Ballow represented 19.  The fifth meet-and-confer was held on December 30, 2015 at 1:00 PM CST and lasted approximately one hour.  Douglas S. Curran of Covington & Burling represented Sony; Steven C. Douse and Christopher G. Gurchiek of King & Ballow represented 19.

[4]  The four sets of document requests at issue here contain 102 separate requests.  Of these, 19 agreed to withdraw, at least temporarily, three (Request Nos. 31-33 of the Fifth Set); Sony agreed to respond to 12 (Request Nos. 10-19 of the Second Set; Request Nos. 21 and 30 of the Fifth Set); and the parties agreed in principle on five more, subject to one or the other party drafting clarifying language (Request Nos. 54-55 of the Second Set).  That leaves a total of 82 separate document requests in response to which Sony has refused to produce even a single document in reliance on the objections set forth in its responses.

[5]  The recent revisions to Rule 26(b)(1) were designed to limit discovery overuse by focusing on proportionality in the discovery of otherwise relevant information; the drafters seem to have intended no change in the standard of relevance.  *See* Notes of Advisory Committee on 2015 amendments (discovery into certain matters that would have been considered relevant under previous version of Rule 26(b)(1) "is not foreclosed by the amendments").  *Cf. Cohen v. Cohen*, 09 Civ. 10230 (LAP), 2015 U.S. Dist. LEXIS 96306, *9 n.2 (S.D.N.Y. June 29, 2015) (all documents found to be discoverable in that case under the then-applicable standard would also be discoverable under the proposed revisions to Rule 26(b)(1) because they

Hon. Gabriel W. Gorenstein
January 7, 2016
Page 3

*Condit v. Dunne,* 225 F.R.D. 100, 105 (S.D.N.Y. 2004). It is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Nunez v. City of New York*, 2013 WL 2149869, *2 (S.D.N.Y. 2013) (quoting from *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)). It is "well-settled within this Circuit that 'any possibility that the sought-after information may be relevant to the subject-matter of the action will satisfy Rule 26(b)(1)'s requirements." *Cohen v. Cohen*, 09 Civ. 10230 (LAP), 2015 U.S. Dist. LEXIS 96306, *9 n.2 (S.D.N.Y. June 29, 2015) (quoting from *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 274 (S.D.N.Y. 1999) and *Daval Steel Prods. V. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991)).

Although the requesting party bears the initial burden of demonstrating relevance, "[t]his bar is relatively low, requiring the requester to demonstrate only 'any possibility of relevance sufficient to warrant discovery . . . ." *Cohen*, 2015 U.S. Dist. LEXIS 96306 at *9 (quoting from *Condit*, 225 F.R.D. at 106 and *A.I.A. Holdings, S.A. v. Lehman Bros.*, 97 Civ. 4978, 2000 U.S. Dist. LEXIS 8116, *2 (S.D.N.Y. June 12, 2000)). Once that showing is made, the burden shifts to the withholding party, which may not rely on general and conclusory objections but rather "must offer a specific justification for denying access to each document." *Id.*

## A. Underpayment of Streaming Royalties

19 claims that Sony failed to properly account and pay 19 for Masters licensed to third-party streaming services by describing the exploitation as a "sale" or "distribution." First Amended Complaint, Dkt. No. 18, at ¶¶ 33-41. In order to prove Sony's incorrect mischaracterization when licensing the Masters, 19 must discover documents evidencing Sony's practices and policies in licensing Masters for purposes such as digital downloads or streaming in order to determine how Sony regularly describes such licenses. This discovery would also include agreements with third parties concerning the Masters in question, communications surrounding the negotiations of the relevant sections of those agreements pertaining to the characterization of the license similar to Section 7.16 of the Recording Agreement, and the revenues received as a result of those agreements which reflect the royalty rates applied by Sony. Additionally, in order to establish custom, 19 may also require communications with other third parties relating to how Sony and/or other similarly situated record companies typically characterize and account for such licenses. Requests Nos. 20-26 of the Second Set, Request No. 8 of the Third Set, and Request No. 1 of the Fourth Set seek exactly those documents. Request No. 7 of the Third Set also seeks the communications between Sony and David Turnbull and/or Clive Rich, who acted on behalf of Sony in negotiation of the Recording Agreement. Furthermore, to address the scale at which Masters were distributed and mischaracterized,

---

were "proportional to the needs of the case"). Therefore it is appropriate to rely on existing case law defining relevance under the prior versions of Rule 26.

Hon. Gabriel W. Gorenstein
January 7, 2016
Page 4

19 must also discover documents related to the actual distribution, including source reports and statements relating to such Masters. Request No. 24 of the Fifth Set seeks such documents, and Request No. 28 of the same set seeks those related specifically to digital service providers, or DSPs.

Since Sony also has foreign affiliates who similarly license Masters in foreign territories, inter-company license agreements and the negotiations surrounding them would provide further insight into how Sony typically characterizes such licenses, both internally and with third parties, and documents evidencing the actual foreign revenues received by Sony for exploitation of the Masters in foreign territories, including royalties received, would provide insight into which rates were actually applied by Sony. Request Nos. 1-2 of the Third Set and Request No. 29 of the Fifth Set seek such documents. Additionally, to address the scale at which foreign royalties were underpaid, 19 must also discover documents related to the actual royalties received by Sony from foreign sources. Request No. 26 of the Fifth Set seeks such documents.

### B. Sony's Incorrect Deduction of Amounts Spent on Television Advertising

19 claims that Sony generally failed to seek consent from 19 for certain television and radio advertising ("TV/Radio Spends") of the Artists' Masters and then underpaid 19 by utilizing 19's royalties to recoup money spent in excess, inconsistent with Sections 7.5.1 and 7.5.2 of the Recording Agreement. First Amended Complaint, Dkt. No. 18, at ¶¶ 42-53. During the meet-and-confers on December 16, 2015 and December 30, 2015, Sony stated that 19's requests are not relevant because this is an issue of pure contractual interpretation, since Sony and 19 dispute whether the maximum amount of the aggregate TV/Radio Spends applied to each "individual" undefined advertising campaign or an "aggregate" campaign. This objection is improper.

Even after the Court determines the correct interpretation of Section 7.5.1 and 7.5.2, it must be determined if Sony complied with each provision (because the TV/Radio Spends were not in excess) or if Sony was required to obtain 19's permission but failed to do so (because the TV/Radio Spends were, in fact, in excess). Request Nos. 28-32 of the Second Set seek documents, such as communications between Sony, 19, and other third parties, evidencing these actual costs. Request No. 6 of the Third Set specifically seeks communications between Sony and Tom Ennis or Chrissie Harwood, both former high-level executives of 19 Entertainment. Additionally, Request No. 16 of the Fifth Set seeks the actual budgets themselves, for each of the Artists' music videos, whether or not approved by 19, and Request No. 18 seeks invoices for the actual deductions made by Sony.

Similar to the streaming royalties claim, in order to show Sony misinterpreted how the amount of TV/Radio Spends applied to advertising campaigns, 19 is entitled to discovery evidencing Sony's practices and policies regarding TV/Radio Spends in order

Hon. Gabriel W. Gorenstein
January 7, 2016
Page 5

to determine how Sony regularly applies such accounting (on an "individual" or "aggregate" basis), including similar agreements with third parties and communications surrounding the negotiations of the relevant sections of those agreements pertaining to TV/Radio Spends similar to Section 7.5.1 and 7.5.2 of the Recording Agreement. Request Nos. 9-10 of the Third Set seek exactly those documents.

Since Sony also has foreign affiliates who similarly advertise the Artists' Masters in foreign territories, Request Nos. 3-4 of the Third Set seek similar documents, such as communications involving Sony, its foreign affiliates, and 19, evidencing those foreign advertising costs. Additionally, Request No. 5 of the Third Set seeks documents evidencing instances where Sony may have given foreign affiliates "royalty breaks," with or without 19's prior approval, which would also have an effect on the underlying costs. Request Nos. 1-15 of the Fifth Set narrow these requests by identifying specific foreign territories.

### C. Sony's Deduction of Excess Charges from 19's Royalties

19 claims Sony deducted unsupported charges from royalties due to 19, including (1) actual expenses which were not deductible under the terms of the Recording Agreement and (2) expenses allowed but for which Sony cannot provide backup that the expense was incurred. First Amended Complaint, Dkt. No. 18, at ¶¶ 54-64. For example, 19 claims Sony charged 19 for costs in excess of approved budgets for music videos when 19 was only responsible for approved charges and Sony cannot provide budgets for a number of music videos for which it took deductions from 19's royalties, making it impossible for 19 to determine amounts due to it. *Id.* In order to show Sony charged 19 for costs in excess of approved budgets for music videos that were not approved by 19, 19 must discover documents evidencing the actual budgets and costs for the music videos, when Sony sent 19 any requests for approval/consents, when and if 19 responded to such requests, and the actual deductions Sony took pursuant to the budgets and costs. Request Nos. 35-36 of the Second Set seek such documents.

Additionally, related to both 19's streaming royalties claim and TV/Radio Spends claim, it is necessary to determine which expenses were properly deducted, such as those for advertising, and the categorization of such expenses to ensure they are proper under the terms of the Recording Agreement. Request Nos. 33-34 of the Second Set seek documents evidencing all the deductions taken from 19's royalties as a baseline for determining which calculations were improper as set forth in the claims. Similarly, Request Nos. 17-18 of the Fifth Set seeks back-up documentation for the expenses charged by Sony and the actual invoices for all deductions taken. Request Nos. 42-43 of the Second Set seek documents evidencing all advertising deductions taking from 19's royalties from 2002 until the present, and Sony's underlying practices and policies in taking such advertising deductions. Such practices and policies would aid 19 in determining Sony's intent when negotiating the language of the agreement and its

Hon. Gabriel W. Gorenstein
January 7, 2016
Page 6

subjective understanding of the applicable terms, and if any improper deductions were done in bad faith, which is relevant in the calculation of damages.

### D. Incorrect Royalties Paid for Joint Venture Compilation Albums

19 claims Sony improperly accounted for and paid 19 a lower royalty rate than what is required under the Recording Agreement for Compilation Albums released by joint ventures of which Sony is a part. First Amended Complaint, Dkt. No. 18, at ¶¶ 65-71. 19 is entitled to discovery to determine whether Sony applied the proper royalty rate (because the album was a joint venture) or Sony applied the improper royalty rate (because the album was released solely by a third party). Request Nos. 37-38 of the Second Set seek documents that would evidence how Sony characterized the Compilation Albums, as well as if the proper rate was actually applied by discovering the royalty payments received by Sony from such third parties, and the royalty rate then provided to 19 from Sony.

### E. Improper Calculation of Escalations

19 claims Sony did not properly escalate royalty rates for sales of Albums as required by the Recording Agreement, such as those sold in excess of $1 million. First Amended Complaint, Dkt. No. 18, at ¶¶ 72-75. While Sony has conceded it did not properly calculate escalations, it has not addressed the ways in which it erred in calculating amounts due under the escalation clause of the Recording Agreement. In order to determine exactly how Sony improperly calculated these escalations, 19 must discover documents that might evidence Sony's regular policies and practices in calculating escalations, including whether such things as foreign sales and television advertised sales were included in such escalation calculations. Request Nos. 39-41 of the Second Set seek exactly those documents. Additionally, the practices and policies sought would aid 19 in determining Sony's intent in negotiating the language of the Recording Agreement and its subjective understanding of the applicable terms, and if any improper calculation of escalations were done in bad faith, which is relevant in the calculation of damages. Last, in order to confirm the Albums in question that were sold in excess of $1 million, 19 must discover documents evidencing the number of albums sold and distributed, including the price and inventory and the related royalty reports. Request Nos. 24-25 of the Fifth Set seek the actual distribution reports and the perpetual inventory reports, respectively.

### F. Failure to Properly Account for Foreign Sales in Calculating Escalations

19 claims Sony underreported foreign royalties because it failed to count Album sales in foreign territories in determining the escalation of royalty rates for albums such as those sold in excess of $1 million. First Amended Complaint, Dkt. No. 18, at ¶¶ 91-93. In order to support this claim and confirm the Albums in question that were sold in excess

Hon. Gabriel W. Gorenstein
January 7, 2016
Page 7

of $1 million, 19 must discover documents evidencing the number of foreign album sales, including the price and inventory and the related royalty reports. Request Nos. 25-27 of the Fifth Set seek those documents.

### G. Sony's Failure to Count all Albums Sold through Normal Retail Channels in Calculating Escalations

19 claims Sony failed to include albums sold at full price through television advertised sales, which in the industry, is a "normal retail outlet," in calculating escalations. First Amended Complaint, Dkt. No. 18, at ¶¶ 94-96. In response to the audit, Sony agreed. As a result, since Sony has already conceded to one mischaracterization of albums sold through "normal retail outlets," it is necessary for 19 to determine if there are other instances where Sony failed to include such album sales in calculating escalations in order to fully support its claim. This requires 19 to discover documents evidencing Sony's practices and policies in determining what falls into the category of "normal retail outlets," in order to understand Sony's subjective understanding of the term, as well as if any mischaracterization was done in bad faith, which is relevant in the calculation of damages.

### H. Sony's Failure to Correctly Account for Income from Records Clubs

19 claims Sony underreported Record Club royalties, including using a base price other than the sale price reported by the record club, underreporting the number of units sold, not paying 19 for "free goods" distributed by the Record Clubs (despite being paid for excessive free goods), and disguising "trademark royalties" received from Record Clubs as Master use payments. First Amended Complaint, Dkt. No. 18, at ¶¶ 101-09. First, in order to support 19's claim related to Record Club royalties, 19 must discover (1) documents that evidence the way units were sold, at what price, and what royalties Sony received for the units sold, including any lump sum payments, (2) documents that evidence any "free goods" distributed by Record Clubs and payments received by Sony for such "free goods," and (3) documents that evidence any revenues received by Sony for use of any Artists' trademark or logo by Record Clubs. Request Nos. 46-50 of the Second Set seek such documents. Second, in order to determine if the "trademark royalties" received by Sony were valid, rather than mischaracterizations of royalty payments, 19 must discover documents evidencing the trademarked material used by the Record Clubs in question and in Sony's possession, including artwork and label copies for the Artists' albums. Request No. 23 of the Fifth Set seeks the label copies.

### I. Sony's Improper Charging of Taxes to 19

19 claims Sony incorrectly deducted foreign income taxes from royalties owed to 19 because royalties reported to Sony were reduced by foreign taxes, which Sony made up by taking advantage of an IRC tax credit. First Amended Complaint, Dkt. No. 18, at ¶¶

Hon. Gabriel W. Gorenstein
January 7, 2016
Page 8

110-19. In order to support 19's claim, 19 must discover documents evidencing the amount of royalties actually reported to Sony from its foreign affiliates, including, but not limited to, album sales and Master licenses. Request No. 51 of the Second Set seeks exactly those documents. Additionally, 19 claims it was entitled to a portion of any tax credit received by Sony, yet Sony failed to adjust its deductions from royalties accordingly. In order to support this claim, 19 must discover documents evidencing the foreign tax credits taken by Sony, including the double taxation exemption claim referenced in Paragraph 7.2 of the Recording Agreement, in the territories in which the Artists' Masters were exploited. These documents are the subject of Request Nos. 52-53 of the Second Set.

### J.  Under and Non-Reporting of Synchronization and Other Royalties to 19

19 claims Sony did not report certain synchronization master uses for which Sony sought and received approval from 19 and failed to account for and pay royalties to 19 for products sold. First Amended Complaint, Dkt. No. 18, at ¶¶ 115-19. In order to support 19's claim, 19 must discover documents evidencing instances where Sony sought and received approval from 19 for synchronization master uses, but failed to report them. Request Nos. 19-20 and 22 of the Fifth Set seek those types of documents concerning film, video games, and live broadcasts.

### II.  Overbreadth and Burdensomeness

Nearly every one of Sony's objections, except for the objections to Request Nos. 9-19 of the Second Set, claims the request is both "overly broad" and "unduly burdensome." This blanket objection, however, fails to explain why the particular request is overly broad and unduly burdensome. Because Sony has not explained what might be burdensome, this objection should not be credited. "[T]he objecting party bears the burden of demonstrating 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.'" *Sullivan v. StratMar Systems, Inc.,* 276 F.R.D. 17, 19 (D. Conn. 2011) (quoting from *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984). *See Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 592-93 (W.D.N.Y. 1996) (generalized objection that a discovery request is burdensome without resort to specific reasons is insufficient to justify refusal to respond).

Although the burden must be proportionate to the needs of the case, unless Sony provides particulars about how much effort would be required to compile the requested information, which it has refused to do, there is no way to tell if that degree of burden outweighs the likely probative value of the information or, perhaps more to the point, whether there is some reasonable way to limit the request. When 19 asked Sony whether

Hon. Gabriel W. Gorenstein
January 7, 2016
Page 9

it had any estimates as to the time or cost associated with producing the documents requested, Sony offered no specifics, but merely assured 19 it would involve many hours at a high cost. This is not sufficient to maintain a burdensomeness objection. *See Gross v Lunduski*, 304 FRD 136, 151-52 (W.D.N.Y. 2014).

### III. Vagueness and Ambiguity

Sony refused to produce documents with respect to Request Nos. 4-6, 9, 21, 22, 24, 25, 32, 33, 35, 38, 50, 53, and 55 of the Second Set, and Request Nos. 8-10 of the Third Set, because they were vague and ambiguous in that they included terms not defined by 19, or did not identify a particular item in question with sufficient specificity. For example, "Audit Claims," "Streaming Agreements," "Streaming Provider," "Spotify," and "Spotify Agreement" were not defined in the Second Set. 19 addressed nearly all of these in the meet-and-confer discussions on December 16, 2015 and December 17, 2015, but irrespective of 19's explanation to resolve any ambiguity, Sony continues to refuse to produce documents responsive to these requests.

Similarly, Sony refused to produce documents with respect to Request Nos. 28, 35, 38, 41, 44, 50, 53, 55, and 57 of the Second Set, because they sought documents related to Sony's contentions in this lawsuit, and Sony claims it has made no contentions. Rather, Sony claims that it "den[ied] the allegations in the corresponding paragraphs of the [First] Amended Complaint." Ex. E at 16, 18-20, 23-26. A "contention" is defined as a "statement or point that one argues for as true or valid." Webster's New World Dictionary p.307 (2nd College ed. 1976). Each of Sony's denials of allegations in the complaint represented an affirmative contention that the allegation was untrue. *See*, e.g., Black's Law Dictionary 445 (7th ed. 1999) (a denial is "[a] defendant's response controverting the facts that a plaintiff has alleged in a complaint; a repudiation"). Taking the position that something is not true is just as much a contention as taking the position that it is. Sony agreed, during the meet-and-confer on November 12, 2015, concerning 19's First Set of Interrogatories, that if 19 changed the word "contention" to "denial" then Sony would drop this objection. However, Sony did not consider an offer to do the same with respect to the document requests sufficient to resolve its objections.

### Conclusion

19 respectfully seeks an Order compelling Sony to produce documents pursuant to 19's Second, Third, and Fourth Sets of Requests for Production.

Hon. Gabriel W. Gorenstein
January 7, 2016
Page 10

Very truly yours,

Steven C. Douse

cc:     All Counsel