Richard S. Busch (SB 5613)
KING & BALLOW
315 Union Street, Suite 1100
Nashville, Tennessee 37201
Telephone:  (615) 259-3456
Facsimile:   (615) 254-7907

Kenneth E. Gordon (KG 5703)
GORDON, GORDON & SCHNAPP, P.C.
30 Broad Street, 21st Floor
New York, New York 10004
Telephone:  (212) 355-3200
Facsimile:   (212) 355-3292

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **19 RECORDINGS LIMITED** | ) | |
| | ) | **Case No. 14-CV-I056 (RA)(GWG)** |
| **Plaintiff,** | ) | |
| **v.** | ) | **PLAINTIFF'S AMENDED SECOND SET** |
| | ) | **OF REQUESTS FOR PRODUCTION OF** |
| | | **DOCUMENTS TO DEFENDANT** |
| **SONY MUSIC ENTERTAINMENT,** | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| **Defendant.** | ) | |

Please Take Notice Plaintiff 19 Recordings Limited ("19 Recording"), pursuant to Federal Rule of Civil Procedure 34, hereby requests that Defendant Sony Music Entertainment ("Sony") produce, within thirty (30) days, the following documents and tangible things for inspection and copying at the offices of King & Ballow, 315 Union Street, Suite 1100, Nashville, Tennessee 37201:

## Definitions

As used herein -

A.  "All," "any," and "each" shall each be construed as encompassing any and all.

B.  "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

C.  "Sony" "you," "your," or "yourself" refers to Defendant Sony Music Entertainment, its agents, representatives, attorneys, and/or any other person acting or purporting to act on its behalf.

D.  "19 Recordings," "19," or "Plaintiff" refers to Plaintiff 19 Recordings Limited.

E.  "Amended Complaint" means the First Amended Complaint for Breach of Contract; and Breach of the Implied Duty of Good Faith and Fair Dealing filed in this action by 19 Recordings on May 19, 2014, in the United States District Court for the Southern District of New York, Case No. 14-CV-1056(RA)(GWG) (DE 18).

F.  "Answer, Affirmative Defenses, and Counterclaim" means the Answer, Affirmative Defenses, and Counterclaim of Defendant Sony Music Entertainment filed March 31, 2015 (DE 35).

G.  "Artists" shall mean Kelly Clarkson, Clay Aiken, Carrie Underwood, Chris Daughtry, Kellie Pickler, Jordin Sparks, David Archuleta and David Cook.

H.  "Audit" or "Audits" shall mean the audits of Sony's books and records performed by Haber Corporation and by Miller, Kaplan, Arase & Co., LLP on behalf of 19 and the Artists involved in this action.

I.  "Master Recording Agreement" shall mean the option agreement dated February 8, 2002 entered between 19 and Ronagold Limited granting Ronagold Limited "an exclusive irrevocable option to designate" the exclusive record label for the first series of the American version of Pop Idol, including the template "Exclusive Recording Agreement" attached thereto as Exhibit A.

J.  "Communicate" or "communication" shall mean any transmission of information in any medium, including but not limited to oral, graphic, written, pictorial, or other perceptible means, including, but not limited to, telephone conversations, letters, documents, memoranda, notes, telegrams, facsimile transmissions electronic mail, meetings, and personal conversations.

K.  "Document" is defined to be construed in the broadest possible manner and include all electronically stored information, originals and all copies of correspondence, memoranda, notes, records, stenographic records, recordings, schedules, tabulations, tables, charts, reports,

lists, agreements, files, dossiers, curriculum vitae, diaries, calendars, studies, summaries, synopses, analysis of electronic or mechanical recordings, telegrams, graphs, books, log sheets, ledgers, accounting statements, invoices, vouchers, orders, order forms, receipts, transcripts and messages (including report of telephone conversation and conferences), minutes and transcripts of meetings, inter and intra-office communications, microfilm, microfiche, computer printouts, databases and documents or information stored in electronic media, such as data stored on a computer, network, server, backup, archive or other storage media, email messages, voicemails, instant messages, text messages, electronic calendars, audio files, data on stationary, portable, handheld or other computers, including laptops and handheld devices, animation, metadata, graphics, photographs, databases, spreadsheets, websites, drawings and all other types of digital data stored in any format or Media, photographs, photographic negatives, movies, videotapes, sketches, sketches, diagrams, blue and black line prints, drawings, drafts of writings and all other written, printed, stored or recorded material of any kind.  Where any of the "documents" were transmitted by means of electronic or telephonic transmission (i.e., fax), any cover sheet accompanying the document and all attachments are included in this definition.

L.  "Identify", "identity", or "specify" means:

a.  When used in reference to a person, to state his/her full name, present or last known address, present or last known telephone number, and when referring to a natural person, additionally, the present or last known place of employment.

b.  When used in reference to a document, state the type of document, general subject matter, date of the document, author(s), addressee(s), recipient(s), and the present or last known location and custodian of the original of the document and any copies thereof.  If any such document was, but is no longer, in your possession or custody or subject to your control, state what disposition was made of it, the date, by whom, and at whose direction;

c.  When used in reference to a communication, state the type of communication (e.g., letter, personal conversation, meeting, etc.), and whether the communication was oral or in writing.  If the communication was oral, state the date of the communication, the parties thereto, the place and approximate time thereof, the substance of what was said by each party, and the identity of all other persons present; if the communication was written, produce the writing;

d.  When used in reference to an act, fact, or event, to state the substance of the act or event, the date, time, and place of performance, and the identity of the actor and/or all other persons present; and

e.  When used in reference to an omission, to state the substance of the act which you contend should or would have been performed, the time and date when such act should or would have been performed, and the person who should or would have performed such act.

M.  "Recording Agreement" or "Agreement" shall mean the "Exclusive Recording Agreement" dated September 25, 2002, with an effective date of September 4, 2002, entered between 19 and The RCA Records Label, a unit of BMG Music, as amended, designating RCA Record Label as the exclusive record label for all American Idol finalists.

N.  "Record Club" shall mean an organization with whom Sony has an agreement that sells or otherwise exploits Artists' Masters to its members whether through mail order or online.

O.  "Master" or "Masters" shall mean any sound recording or master recording delivered to Sony by 19 Recordings utilizing the recording service of one of the Artists under the Terms of the Recording Agreement.

P.  "Digital Download Providers" shall mean any third party which sells or distributes music downloads digitally or electronically sells or distributes the Masters.

Q.  "Spotify" shall mean the commercial music streaming provider Spotify USA, Inc., its agents, representatives, attorneys, and/or any other person acting or purporting to act on its behalf.

R.  "Spotify Agreement" shall mean the agreement dated January 18, 2011 entered between Sony and Spotify USA, Inc.

S.  "Streaming Agreement" shall mean any agreement executed between Sony and a Streaming Provider.

T.  "Streaming Provider" shall mean a company with whom Sony has a contract that allows for such Provider to exploit the Masters by way of their Streaming Service.

U.  "Streaming Service" shall mean third party services that broadcast or "stream" the Masters over the Internet to end users.

V.  "Person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

W.  References to the feminine shall include the masculine; references to the masculine shall include the feminine.

X.  References to the plural shall include the singular; references to the singular shall include the plural.

Y.  "Relates to" means evidences, supports, concerns, constitutes, contains, records, discusses, describes, summarizes, analyzes, discloses, and/or refers to, in whole or in part.

Z.  "Revenue" shall mean wages, income, earnings, interest, profits (or loss), gains or any other return of money or other remuneration received or owed to you, or paid by you, in exchange for labor, services, sale, or lease of goods, property, including intellectual property, or invested capital or any combination thereof.

AA.      Additionally, the definitions of all terms defined in the Definitions Section, Section 1, of the Recording Agreement are incorporated herein by reference.  All undefined terms used herein, if used and undefined in the Agreement, are deemed to be using the same

meaning as they are when used in the Recording Agreement.

## Instructions

1.      This Request for Production of Documents is a continuing Request.  If any additional information or documents relating in any way to this Request are acquired or discovered subsequent to the date of Defendant's response, up to and including the time of trial, these documents shall be furnished to Plaintiff promptly after such documents are discovered.

2.      If you once had any document requested in this Request for Production of Documents but said document was destroyed, lost, given, or loaned to another, or is otherwise unavailable for inspection, furnish Plaintiff with:

a.      The name and address of all other persons who may have said document;
b.      A summary of the contents of said document;
c.      The date and reason(s) why said document was destroyed, lost, given, loaned or otherwise became unavailable; and
d.      The manner of its disposal.

3.      As to any document(s) requested to be produced hereunder as to which you or your counsel assert any claim of privilege and withhold such document, your responses shall provide by way of identification of each document the following information:

a.      The nature of such document;
b.      The name(s) of the author, sender, and recipient of each original, copy, or draft of such document;
c.      The name(s) appearing on any circulation list associated with such document;
d.      A statement of the subject matter of such document; and
e.      A statement of each privilege asserted to such document.

4.      The documents produced pursuant to this Request shall be separately produced for each paragraph of the Request or, in the alternative, shall be identified as complying with the particular paragraph(s) of the Request to which they are responsive.

**Documents to Be Produced**

1.      Please produce all documents referred to or relied upon in preparing Sony's Answer, Affirmative Defenses and Counterclaim.

**Response:**

2.      Please produce all documents referred to or relied upon in preparing Sony's answers to 19 Recordings' First Set of Interrogatories served on you on October 1, 2015.

**Response:**

3.      Please produce all documents referred to or relied upon in Sony's Initial Disclosures under Rule 26 of the Federal Rules of Civil Procedure, including all documents specifically described and/or identified therein.

**Response:**

4.      Please produce all documents concerning the Audits and Sony's response to the Audits, including but not limited to all audit reports obtained from 19 and communications between Sony and Plaintiff or any third party regarding such Audits.

**Response:**

5.      Please produce all documents related to communications between Sony and Haber Corporation, its employees, and/or its agents regarding the Audits.

**Response:**

6.      Please produce all documents related to communications between Sony and Miller, Kaplan, Arase & Co. LLP, its employees and/or its agents regarding the Audits.

**Response:**

7.      To the extent not already produced, please produce each and every document which relates to the allegation of Paragraph 130 of the Answer section of Sony's Answer, Affirmative Defenses, and Counterclaim and Paragraph 4 of the Counterclaim section of SME's Answer, Affirmative Defenses, and Counterclaim that "SME overpaid 19 in royalties for the sale of Compilation Albums under each of the Licensing Agreements."

**Response:**

8.      To the extent not already produced, please produce each and every document which relates to the allegation of Paragraph 130 of the Answer section of Sony's Answer,

6

Affirmative Defenses, and Counterclaim that "the royalty overpayment resulted from the incorrect application of the royalty rate associated with sales of Albums to these sales of Compilation Albums."

    **Response:**

    9.    To the extent not already produced, please produce each and every document which relates to the allegation of Paragraph 130 of the Answer section of Sony's Answer, Affirmative Defenses, and Counterclaim that "SME notified 19 of these royalty overpayments and the reasons for them prior to 19's commencement of this action."

    **Response:**

    10.    To the extent not already produced, please produce each and every document which relates to the allegation of Paragraph 135 of the Answer section of Sony's Answer, Affirmative Defenses, and Counterclaim and Paragraph 5 of the Counterclaim section of Sony's Answer, Affirmative Defenses, and Counterclaim that "SME overpaid 19 in royalties for the sale of permanent digital track downloads under the Licensing Agreements concerning Clay Aiken, Kelly Clarkson, and Carrie Underwood."

    **Response:**

    11.    To the extent not already produced, please produce each and every document which relates to the allegation of Paragraph 135 of the Answer section of Sony's Answer, Affirmative Defenses, and Counterclaim that "the royalty overpayments resulted in part from the incorrect application of the royalty rate associated with sales of Albums to these sales of permanent digital track downloads."

    **Response:**

    12.    To the extent not already produced, please produce each and every document which relates to the allegation of Paragraph 135 of the Answer section of Sony's Answer, Affirmative Defenses, and Counterclaim that "the royalty rate associated with sales of Records other than Albums should have been applied to these sales of permanent digital track downloads."

    **Response:**

    13.    To the extent not already produced, please produce each and every document which relates to the allegation of Paragraph 135 of the Answer section of Sony's Answer, Affirmative Defenses, and Counterclaim that "the royalty overpayments also resulted in part from the failure to apply the royalty provisions of Paragraph 7.7 of the Licensing Agreements concerning Clay Aiken, Kelly Clarkson, and Carrie Underwood, respectively, to these sales of permanent track downloads."

    **Response:**

14.     To the extent not already produced, please produce each and every document which relates to the allegation of Paragraph 135 of the Answer section of Sony's Answer, Affirmative Defenses, and Counterclaim that "SME notified 19 of these royalty overpayments and the reasons for them prior to 19's commencement of this action."

**Response:**

15.     To the extent not already produced, please produce each and every document which relates to the allegation of Paragraph 6 of the Counterclaim section of Sony's Answer, Affirmative Defenses, and Counterclaim that "in December 2011, SME overpaid 19 an advance under the License Agreement for Kellie Pickler in connection with her Recording Commitment Album of the Third Contract Period."

**Response:**

16.     To the extent not already produced, please produce each and every document which relates to the allegation of Paragraph 6 of the Counterclaim section of Sony's Answer, Affirmative Defenses, and Counterclaim that "When calculating an advance for Pickler's Recording Commitment Album of the Third Contract Period, however, SME mistakenly failed to account for applicable reserves."

**Response:**

17.     Please produce all agreements between Sony and any other person or entity concerning the exploitation of the Masters in a manner that would generate royalties for 19 under the Recording Agreement, including but not limited to Streaming Agreements, synchronization and/or Master use licenses, agreements with the Artists' Record Clubs, and all documents concerning the negotiation, drafting, or execution of said agreements.

**Response:**

18.     Provided the Court denies Sony's Motion for Partial Judgment on the Pleadings, please produce documents sufficient to show all revenues received by Sony in connection with each and every Streaming Agreement entered into by Sony, segregated by the revenue received from each individual Streaming Provider.

**Response:**

19.     Provided the Court denies Sony's Motion for Partial Judgment on the Pleadings, please produce documents sufficient to show the streaming revenue received by Sony attributed to the Masters involved in this action, segregated by Streaming Provider, and further produce documents sufficient to show the manner in which Sony calculated the royalties payable with respect to streaming revenue attributable to each Master.

**Response:**

20.     To the extent not already produced, please produce all documents regarding revenues received for the exploitation of the Masters in a manner that would generate royalties for 19 under the Recording Agreement, both domestically and internationally, including but not limited to revenues received from Streaming Agreements, synchronization and/or Master use licenses, agreements with the Artists' Record Club, and all documents regarding how Sony accounted to 19 for those revenues.

**Response:**

21.     Provided the Court grants 19's Motion to Amend, please produce all documents concerning the drafting, negotiation, and interpretation of the Spotify Agreement, including but not limited to documents concerning the scope or nature of Sony's obligations under Paragraphs 4, 10(a), 10(b), and 14, of the Spotify Agreement, and all documents regarding the direct or indirect interests of Sony in any revenues received by Spotify related to Sony's minority ownership in Spotify.

**Response:**

22.     Provided the Court grants Plaintiff's Motion to Amend, please produce all documents regarding communications between Sony and other record companies concerning the drafting, negotiation, and interpretation of agreements with Spotify.

**Response:**

23.     Please produce all documents concerning the drafting, negotiation, or interpretation of the Recording Agreement, including but not limited to Paragraphs 1.22, 1.32, 7.1, 7.2, 7.4.1, 7.4.2, 7.5.1, 7.5.2, 7.7, 7.16, 10.2, and 17.4.

**Response:**

24.     Please produce all documents concerning any request by Sony for 19's approval of television and/or radio advertising costs, including but not limited to any consents or approvals by 19 for amounts over budget.

**Response**:

25.     Please produce all documents concerning instances where Sony recouped television and/or radio advertising costs against 19's royalties pursuant to Paragraphs 7.5.1 and/or 7.5.2 of the Recording Agreement, including but not limited to the actual total costs spent on such advertising campaigns and internal and external communications concerning those costs.

**Response:**

26.     Please produce all documents concerning any request by Sony for 19's approval of Audio Visual Material budgets, including but not limited to any consents or approvals by 19 for amounts over budget for the Artists' music videos.

**Response:**

27.     Please produce all documents concerning Compilation Albums featuring the Artists' Masters which were actually issued or sold by Sony as part of a joint venture, such as the domestic "Now Series," including but not limited to amounts received by Sony from third parties, the royalty rate paid to Sony by those third parties, and the royalty rate paid by Sony to 19.

**Response:**

28.     Please produce all documents concerning Sony's policies and practices pertaining to royalty escalations for the Masters, including policies and practices pertaining to the inclusion of (a) foreign sales and/or (b) albums through television advertised sales, in calculating such escalations.

**Response:**

29.     Please produce all documents concerning instances where Sony escalated royalty rates pursuant to Paragraph 7.1 of the Recording Agreement, for any of the Artists' Albums sold in excess of one million (1,000,000) worldwide, including but not limited to whether the underlying calculations for such royalty escalations included (a) foreign sales and/or (b) albums through television advertised sales.

**Response:**

30.     Please produce all documents concerning Sony's policies and procedures regarding what constitutes a "normal retail outlet" for purposes of royalty calculations, including but not limited to instances where Sony included Albums sold through television advertising, featuring the Artists' Masters, in the calculation of Album escalations.

**Response:**

31.     Please produce documents sufficient to show the number of "Records Sold" and the price at which they were sold, as reported to Sony by each Artist's Record Clubs, and the number of "Records Sold" and prices reported to 19 by Sony, including any instances where Sony provided "free goods" to Record Clubs and whether or not such "free goods" were included in the calculations of "Records Sold."

**Response:**

32.     Please produce all documents concerning revenues received by Sony from each Artist's Record Clubs, including but not limited to advances, lump sum payments, and royalty payments for the use of any of the Artists' trademarks.

**Response:**

33.     Please produce all royalty statements rendered to Sony by its foreign affiliates for use of each Artist's Masters.

**Response:**

34.     Please produce all documents concerning instances where royalties due to 19 were reduced by any foreign tax credit taken by Sony.

**Response:**

35.     Please produce all documents concerning any approval by 19 for third-party synchronization and/or Master license requests from Sony, for use of the Artists' Masters in film, television, and/or video games, and documents sufficient to show all revenue generated as a direct result of those approved licenses.

**Response:**

36.     Please produce all documents concerning the use of Kelly Clarkson's Masters in Glaceau's Vitamin Water promotion.

**Response:**

37.     Please produce all documents concerning any royalty amounts owed to 19 for products sold, which embody the Artists' Masters, that are currently being held by Sony in a "suspense account."

**Response:**

**DATED: October 9, 2015**                        Respectfully submitted,


                                                  By:     /s/Richard S. Busch
                                                          Richard S. Busch (SB 5613)
                                                          **KING & BALLOW**
                                                          315 Union Street, Suite 1100
                                                          Nashville, Tennessee 37201
                                                          Telephone:  (615) 259-3456
                                                          Facsimile:  (615) 254-7907

                                                          Kenneth E. Gordon (KG 5703)

11

**GORDON, GORDON & SCHNAPP, P.C.**
30 Broad Street, 21st Floor
New York, New York 10004
Telephone:  (212) 355-3200
Facsimile:   (212) 355-3292